OPINION OF THE COURT BY JUSTICE HUGHES
C. W. Hoskins Heirs[1] and Phillip and Robin Lewis (Hoskins-Lewis) and Ruth Farmer Wells, Albert Wells Jr. and Terry Farmer (Wellses) dispute the location of the boundary line between their adjoining properties. The location of the boundary line determines which of the parties is entitled to approximately $440,000.00 of coal royalties from mining that occurred in the disputed area between the two properties. The Leslie Circuit Court entered judgment in favor of Hoskins-Lewis. In a 2-1 decision the Court of Appeals reversed the circuit court's ruling and remanded the case for entry of a judgment in favor of the Wellses and the mining company, ICG Hazard, LLC (ICG). Hoskins-Lewis petitioned this Court for discretionary review, which we granted. After careful review, we reverse the Court of Appeals.
FACTS AND PROCEDURAL HISTORY
The issue presented in this case is the location of the boundary between two adjoining properties. The property on the northwest side of the disputed boundary is owned by C. W. Hoskins Heirs, who own the mineral rights to the property, and by individuals Phillip Lewis and Robin Lewis, who own the surface rights to the property. It is undisputed that the Hoskinses' mineral deed and the Lewises' surface deed cover the same property. The property to the southeast of the disputed boundary is owned by Ruth Farmer Wells, Albert Wells Jr., and Terry Farmer (Wellses). The Wellses entered a coal lease with ICG in 2005. In 2006, the Lewises entered into a Surface Lease Agreement with ICG for mining and in 2008, C.W. Hoskins Heirs entered into a Mineral Lease Agreement with ICG for coal mined from the property.
In 2009, ICG began preparations to mine the Wellses' property and retained Ekenco, Inc. (Ekenco), a surveying company, to flag the boundary between the Hoskins-Lewis's and Wellses' properties. After the boundary was flagged, Ruth Wells (Ruth), who lived in the area for approximately sixty-two years, questioned whether the boundary line was correct, believing that Ekenco had actually flagged an old bulldozer road instead of the true boundary line. Ruth hired Kentucky Surveyors to determine the proper location of the boundary line. The survey was performed by Curtis Felts prior to ICG mining the area.
*855 The boundary between the Hoskins-Lewis's and the Wellses' property begins at Raven Cliff Hollow[2] and continues down its meanders to Greasy Creek. ICG began mining in the vicinity of the adjoining properties in October 2009 and mined from the head of Raven Cliff Hollow down to the No. 7 coal seam. ICG mined the area over the course of one year and once complete, Raven Cliff Hollow was destroyed.
This post-mining boundary dispute is particularly problematic because the parties' deeds are entirely based on natural features that the mining destroyed. The portions of the deeds describing the common boundary provide as follows:
Wellses' Deed:
Beginning on the North bank of Greasy Creek on the Middle Fork of the Kentucky River at the mouth of the Raven Cliff Hollow; thence running up same as it meanders, being a conditional line between H.W. Hoskins and Burley Hoskins to the top of the ridge between Lower Bad Creek and Round Hole Creek to the lands of the Kentucky River Coal Corporation....
Hoskinses' Deed
[T]hence up said drain as it meanders with line of Ford Motor Co. to the top of the mountain the divide between Greasy Fork and Lower Bad Creek of the Middle Fork; thence with the top of said mountain and as it meanders, nearly South, to the Raven Cliff Hollow on the divide between Greasy and Round Hole Creek; thence down said Raven Cliff Hollow to the mouth thereof of Greasy....
Lewises' Deed:
[T]o the top of the hill between Bad Creek and Greasy Creek, thence with the crest of said divide as it meanders to the head of the Raven Cliff Branch; thence down said branch as it meanders to the center of Greasy Creek....
In September 2012, Hoskins-Lewis sued ICG in Leslie Circuit Court claiming that the mining operation crossed the property line and that Hoskins-Lewis were entitled to royalties for coal removed from approximately six acres of the disputed area. ICG interpleaded the Wellses to determine which party was legally entitled to the disputed royalties. ICG deposited the disputed royalties, approximately $298,000, with the court.[3] In their counterclaim, the Wellses argued that the mineral and surface property claimed by Hoskins-Lewis is owned by the Wellses and that title should be quieted in their favor.
The trial court conducted a bench trial on November 25, 2013, and both parties presented evidence of the surveys they had performed. Hoskins-Lewis used licensed surveyors Lonnie Fields and Anthony Bowling of CBC Engineers. The Wellses presented testimony from surveyor Felts, who conducted his survey prior to ICG's mining activity. Each party also presented testimony from the various parties involved in the dispute. Notably, the trial judge himself visited the disputed area and walked the property in order to help determine *856 which party's location of the boundary line was correct. The trial court established that the adjoining properties shared a common boundary line along Raven Cliff Hollow. It was undisputed that after the mining, the meanders of Raven Cliff Hollow were obliterated and the meanders that once formed the property line were gone.
On July 16, 2014, the trial court issued thorough Findings of Fact, Conclusions of Law and Judgment in favor of Hoskins-Lewis. After reviewing all the deeds and witness testimony, the trial court determined that the line placed by surveyor Fields was the correct location of the boundary line. The Wellses appealed to the Court of Appeals.
In its 2-1 decision to reverse and remand, the Court of Appeals held that the evidence relied on by the trial court was lacking in both quality and substantiality necessary to support judgment in favor of Hoskins-Lewis. The Court of Appeals disagreed with the trial court's reliance on Fields's survey and determined that Fields's survey did not comport with the legal descriptions in the deeds and was based on erroneous assumptions. The majority found that Felts's survey, performed prior to the mining, was reflective of the legal descriptions and correctly placed the boundary line. Judge Debra Lambert dissented, finding that the majority usurped the role of the trial court by weighing the credibility of evidence.
ANALYSIS
I. The Court of Appeals Erred by Improperly Substituting its Opinion for that of the Trial Court.
Kentucky Rule of Civil Procedure (CR) 52.01 states that "[f]indings of fact, shall not be set aside unless clearly erroneous[.] ..." Whether or not findings of fact are clearly erroneous hinges on whether those findings are supported by substantial evidence. Moore v. Asente, 110 S.W.3d 336, 354 (Ky. 2003). "Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men." Id. Additionally, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. This task is exclusively within the province of the trial court.
CR 52.01 is applicable to boundary disputes. Croley v. Alsip, 602 S.W.2d 418 (Ky. 1980). "It is not for us to determine whether or not we would have reached a different conclusion, faced with the same evidence confronting the trial court." Church and Mullins Corp. v. Bethlehem Minerals Co., 887 S.W.2d 321, 323 (Ky. 1992). Since the trial court is given the task of assessing witness credibility, " '[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal,' and appellate courts should not disturb trial court findings that are supported by substantial evidence." Moore , 110 S.W.3d at 354.
The issue in this case effectively boils down to assessing the evidence of the surveyors and the testimony of the parties and other witnesses regarding where the boundary is located. The trial court considered the evidence and placed weight upon the evidence it found to be most credible. Upon review of the record, we find that there was substantial evidence to support the trial court's finding. The evidence considered and relied upon by the trial court is discussed below.
A. Surveyor Testimony-Lonnie Fields, Anthony Bowling and Curtis Felts *857 As noted, Hoskins-Lewis retained Lonnie Fields and Anthony Bowling to conduct a property survey, while the Wellses retained Charles Felts. Their respective surveys and testimony were entered into evidence.
Fields and Bowling examined the Lewises', Wellses', and C.W. Hoskins Heirs' deeds, and examined their chains of title. Fields also considered a topographical map of the area. Fields noticed that the Wellses' deed included a call for the Kentucky River Coal Corporation (KRCC) line. Fields contacted KRCC and learned that a survey of the KRCC land was performed in 1983. KRCC gave Fields copies of their field survey notes. The notes referenced trees marked with an "x", which Fields located. He also identified other monuments in the area. Fields determined the location of the KRCC line, and KRCC agreed with his placement. Fields used the KRCC line to determine the parties' respective boundaries, which placed the disputed area within the Hoskins-Lewis's boundary.
The Wellses argue, and the Court of Appeals stated, that Fields's survey contained many flaws. One of the purported issues with Fields's survey was that he investigated and determined that the KRCC line intersected with the northeast corner of the Hoskins-Lewis's property, despite no mention of the KRCC line in the Hoskins-Lewis's deeds. The Court of Appeals' majority also took issue with Fields's proposed boundary line reaching the KRCC line, which is located in the Round Hole watershed. Additionally, the Court of Appeals stated that Fields's survey failed to meet standards outlined in Webb v. Compton, which states that a fact finder cannot rely on a surveyor's opinion that is based "upon erroneous assumptions or fails to take into account established factors." 98 S.W.3d 513, 517 (Ky. App. 2002). The Court of Appeals found that Fields's survey does not comport with the legal descriptions of the Wellses', Hoskinses', and Lewises' deeds, and that the survey is based on the erroneous assumption that the Hoskins-Lewis's property reaches the KRCC line. This assumption was deemed erroneous since the KRCC line is not referenced in the Lewises' or Hoskinses' deeds.
There were no erroneous assumptions in Fields's survey. The Wellses take issue with Fields's placement of the line in the Round Hole watershed. But Fields's line continues up the meanders of Raven Cliff Hollow and then reaches the KRCC property, which is expressly stated in the Wellses' deed. The KRCC line crosses Round Hole. Fields testified at trial that after considering both the Wellses' and Lewises' deeds, it became very clear that the line went from Raven Cliff to the divide between Lower Bad Creek and Round Hole Creek to the KRCC property. As a professional land surveyor, Fields was tasked with the obligation of considering adjoining deeds. Once he considered all the deeds and conducted title research, he determined that an important call in the Wellses' deed to be "to the top of the ridge between Lower Bad Creek and Round Hole Creek to the lands of the Kentucky River Coal Corporation...." and he marked the boundary accordingly.
Although asserted by the Wellses, it was not improper for Fields to consider the property description in the Wellses' deed. The Kentucky Administrative Regulations for boundary surveys state that a surveyor shall conduct research to obtain and evaluate "[t]he present and relevant historical record descriptions of: (a) Each parcel to be surveyed; and (b) Each adjoining parcel [.] ..." 201 KAR 18:150 § 5. Even though the KRCC line was not referenced in the Hoskinses' or Lewises' deeds, it is referenced *858 in the Wellses' deed. Fields followed the KAR by researching the Wellses' deed and using it to determine the placement of the line. If he neglected to do so, he would be in violation of the rules a professional survey is bound to follow.
Further, Fields's survey was based on the deed descriptions. The Wellses' deed refers to the "ridge" between Lower Bad Creek and Round Hole Creek, which is the same feature referred to as the "divide" between Greasy Fork and Lower Bad Creeks as called for in the Hoskins-Lewis's deed. These are natural monuments and control over all other means of describing a boundary. Metropolitan Life Ins. Co. v. Hoskins, 273 Ky. 563, 117 S.W.2d 180, 182 (1937). "Artificial marks, courses, distances, and area follow in the order named" in terms of satisfactory means of description. Id. Fields began his survey by starting at the ridge/divide, which was still discernable despite the mining activity. Once he was there, he noticed an "x" on a rock, an artificial mark, which was called for in the KRCC survey from 1983. The natural monument led him to the artificial mark, which are both satisfactory means of description.
Once Fields located the corner of the property at the intersection of the ridge/divide and the KRCC line, Fields determined that the meanders of Raven Cliff Hollow was a straight line down the hollow to the No. 7 coal seam. The trial court determined that the straight line explained the reference to a conditional line in the Wellses' deed and was not inconsistent with the calls in the deeds. Further, it was consistent with what the trial court observed on the property.
The Court of Appeals criticized Fields for drawing a straight line. But Fields, a professional surveyor, used the calls in the deeds to locate the corner and, based on observations in the area, he determined that the line was straight. Fields knew what was required by looking to the calls in both the Lewises' and Wellses' deeds and determined the boundary accordingly. It was proper for the trial court to rely on its own observations of the disputed area and the opinion of a professional land surveyor. The Court of Appeals cannot reject this reliance merely because it would have viewed the evidence differently.
Anthony Bowling, a licensed surveyor and Lonnie Fields's supervisor at CBC Engineers, also testified on behalf of Hoskins-Lewis. After visiting the site, he contacted Ekenco and obtained their survey information. He also considered the mining maps and the Wellses' survey. Bowling determined that the Wellses' and Hoskins-Lewis's property shared a common corner and a common line. He noted that the Wellses' survey performed by Felts indicated that the Wellses' property corners at the top of the knob between Lower Bad Creek, Round Hole Branch and Greasy Creek, but no "knob" is called for in any of the deeds. At trial he testified that when he visited the property, although the area was disturbed, he was able to see the location of Raven Cliff Hollow and that the basic drain was virtually intact down to the No. 7 coal seam.
The Wellses questioned Fields's and Bowling's reliance on the calls in the Wellses' deed to establish the boundary line and argue that Fields and Bowling "stretched" the Hoskins-Lewis's property line. Bowling testified that in his opinion, the calls in the Wellses' deed do not differ from the calls in the Hoskins-Lewis's deeds, they are just defined a different way. The Wellses and Hoskins-Lewis still share a common line despite the verbiage being different. In his opinion, based on the Kentucky Board of Licensure, a surveyor is negligent if he does not look at calls in an adjoining deed and take them *859 into consideration when forming an opinion. This is supported by 201 KAR 18:150 §§ 3 and 5, which outline the standards for professional land surveyors in Kentucky.
The Wellses hired Curtis Felts of Kentucky Surveys, Inc., to survey the disputed area prior to any mining. Felts reviewed the Wellses' deed and maps. Felts met Albert Wells Jr. at the top of the ridge. Albert pointed out the point he believed to be the head of Raven Cliff Hollow, which matched the point marked as the head on the Ekenco survey. Felts also discovered evidence on the ground to support the contention that it was in fact the head of Raven Cliff Hollow. Felts proceeded to mark the boundary along the meanders of Raven Cliff Hollow to the No. 7 coal seam.
Upon first glance, it would seem that the work performed by surveyor Felts should control, because his survey work was performed prior to the mining activity in the disputed area. However, the trial court took issue with Felts's survey and methods.
First, Felts did not consider adjoining deeds, which is a direct violation of 201 KAR 18:150 § 5(1)(b), which requires a professional land surveyor to obtain and evaluate the historical record descriptions of each adjoining parcel.
Felts also stated at trial that he was only concerned with the Wellses' line and was not asked to locate the KRCC line, despite the Wellses' deed specifically referring to the KRCC line.
Second, Felts testified that Albert Wells Jr. met him on the disputed property and pointed out where he believed the head of Raven Cliff Hollow was located. There is evidence to suggest that Albert Wells Jr. painted a tree where he believed to be the corner of the property. Felts labeled this point as the "knob" on his survey, even though "knob" is not called for in any of the deeds. Acknowledging that there is a difference between a knob and a ridge, the trial court agreed with Fields that the common corner of the properties was located at the ridge/crest (as stated in the deeds) and not at a knob because no deed calls for a knob.
Third, Felts admitted that Albert Wells Jr. showed him the tree he painted and the line he believed to be the boundary. However, it was not until trial that Felts realized that the painted tree Albert showed him was actually painted by Albert himself and was not an established corner. As Judge Lambert noted in her dissent, Felts did not conclude where the property cornered independently, but "instead accepted the self-serving representation of the person paying him, who was neither a licensed surveyor nor a credible witness...." Although Felts testified as to other indications that the point he marked was the head of Raven Cliff Hollow, he began the physical survey by taking Albert's word on the location, which raised suspicion as to its accuracy.
Additionally, Felts's initial survey labeled the line "Conditional Line ... as stated by Albert Wells " (emphasis added) and labeled the beginning of the boundary line as the "knob." Prior to trial, Felts removed the "as stated by Albert Wells" language and replaced "knob" with "crest," which is the term used in the Lewises' deed. During trial, Felts candidly admitted that the statements made on his initial survey were still true.
The Wellses argue that according to the KAR, a professional surveyor must gather parol evidence when performing a survey and therefore it was Felts's duty to rely upon statements made by Ruth and Albert *860 Wells. 201 KAR 18:150 § 6.[4] While a professional surveyor should consider parol evidence, the record in this case indicates that the trial court found that Albert lacked credibility as a witness, likely casting doubt on Felts's survey given that Felts located the head of Raven Cliff Hollow to be the exact spot Albert pointed out.
The trial court determined Fields's survey to be more credible than Felts's survey. "A fact-finder's choice between conflicting opinions of expert witnesses rarely can be held 'clearly erroneous.' " Gatliff v. White, 424 S.W.2d 843, 844 (Ky. 1968). As long as the opinions are not based upon erroneous assumptions, the trial court may choose between the conflicting opinions of surveyors. Howard v. Kingmont Oil Co., 729 S.W.2d 183, 184-85 (Ky. App. 1987). The surveys performed by Fields and Felts directly contradict one another because they place the boundary line in very different places. However, Fields is a professional surveyor who consulted a variety of resources prior to determining where he concluded the correct boundary line is located. Given that the trial court had the opportunity to assess the credibility of the witnesses and weigh all the evidence, the trial court's determination that Fields's survey was correct is not clearly erroneous.
B. Rick Keene testimony
The Wellses presented testimony of expert Rick Keene, a licensed land surveyor and owner of Keene Mining Consultants, Inc. Keene reviewed the deeds of the parties, surveys conducted by Ekenco, Fields/Bowling, and Felts, and other discovery items. Keene introduced computer-generated drawings of the disputed area. Keene opined that Fields arbitrarily struck a straight line from the last point of no disturbance to the KRCC line, which was prohibited by Kentucky surveying practices and standards.
However, Keene had never been on the property and had not performed any of the survey work, other than reviewing the previous surveys, maps, and documents. The trial court disagreed with Keene's opinion that the line as determined by Fields was arbitrary. Notably, Keene did not locate the disputed corner of the property consistent with any other witness.
C. Phillip, Noah and Teresa Lewis Testimony
Phillip Lewis testified at trial that he lived on the property since the 1980s and that his property, including the area in dispute, was logged prior to the mining. The area was logged twice on his behalf and there were no complaints by the Wellses either time. No one made any objection to the logging or any claim to the logged property on either occasion. Additionally, Phillip showed Bowling and Fields where the general vicinity of Raven Cliff Hollow was located but did not point out specifically its head or any portions of the boundary line as he believed them to be located.
Noah Lewis, who is the brother of Phillip Lewis, testified that he logged property in the Raven Cliff Hollow vicinity fifteen to eighteen years before the mining. He testified that Phillip Lewis was paid for timber logged from the disputed area, and that at the time no one claimed the property other than Phillip Lewis. Additionally, he testified about a time in which he and his wife, Teresa Lewis, daughter of Ruth Wells, drove Ruth to the disputed property. The three of them were in the area before Raven Cliff Hollow was disturbed. Ruth *861 told them she had never been to this area of the property before. Noah Lewis stated he believed Phillip Lewis owned the disputed property and he was testifying against his own interest, given that his wife, Teresa, is Ruth's daughter.
Teresa Lewis also testified on behalf of Hoskins-Lewis. Teresa also recounted the time in which she and Noah took Ruth to the disputed area of the property and Teresa said that Ruth asked her who owned the property. Ruth admitted to going to the disputed area with Noah and Teresa but denied asking who owned the property. The disputed area was visible from Teresa's home and she also believed the property belonged to Phillip Lewis. The trial court found both Teresa and Noah Lewis to be credible witnesses, believing in particular that Ruth questioned the property ownership, which contradicted her trial testimony.
D. Ruth and Albert Wells Jr. Testimony
In his trial testimony, Albert Wells Jr. stated that Ruth asked him to walk to Raven Cliff Hollow over concern that her property line was improperly marked. Albert testified that David Smith, son of Janice Smith, walked with him, and indicated where Truman Smith believed the property line was located. Truman Smith was married to Ruth's sister, Janice Smith, and hunted in the area many times.
In its findings, the trial court noted that Janice and Truman Smith did not enter an appearance in the case. While the Wellses indicated that Truman Smith is now deceased, he was not deceased at the time the action was filed. Further, David Smith did not testify to confirm that Truman told him the true location of the boundary line. The trial court also highlighted the fact that Janice Smith would stand to obtain a considerable amount of money if the Wellses prevailed in this litigation. Despite these facts, none of the Smiths participated in the case.
Albert stated that sometime before the mining, he marked three trees with the initials "RF" based on where he believed the head of Raven Cliff Hollow to be. During trial, Albert acknowledged that he accompanied Felts when he began to perform the survey and he showed Felts where the corner of the property was and where the property line was located.
Ruth testified that she had lived in the Raven Cliff Hollow vicinity since 1945, except for a period of approximately six years between 1962 and 1968. She denied ever telling Noah and Teresa Lewis that she had never been to the disputed property. She discussed walking up Raven Cliff Hollow and playing there as a child. She believed the survey by Felts accurately represented the boundary line.
Albert also testified that he and Ruth were able to walk all the way from the No. 7 coal seam to the head of Raven Cliff Hollow. In opening statements, the Wellses' attorney stated that Ruth had walked up and down Raven Cliff Hollow for years, starting from the toe at Greasy Creek up to the top of the Hollow. Albert stated that he rode a four-wheeler up through the area. Although Ruth and Albert did not specify the time period in which they would walk and ride up Raven Cliff Hollow, after visiting the disputed property himself, the trial judge determined that beginning the walk up Raven Cliff Hollow was possible, but the climb could involve extreme discomfort and difficulty because the bed where the drain accumulates is extremely narrow and full of rocks. Further, once the trial judge made it about halfway up the drain, he encountered an 8-12 foot rock ledge abutted by higher cliffs on each side, making it impossible to climb up Raven Cliff Hollow. Based on its own *862 observations, the trial court had difficulty believing the testimony of Albert and Ruth.
II. The Trial Court's Findings Were Not Clearly Erroneous.
As stated above, the trial judge attempted to walk up Raven Cliff Hollow. This was an impossible climb. After attempting the climb, the trial judge drove up Lower Bad Creek and followed the mining operations across the mountain, which he found to be the only practical access path to view the disputed property. From this point of view, he did not see any water draining in the area.
The fact that Raven Cliff Hollow is now destroyed from mining makes this a difficult case. The trial court assessed all of the surveyor evidence, testimony of the parties, and other witnesses and evidence that was presented to support each of the party's assertions as to the location of the boundary line. The Court of Appeals criticized the trial court's belief that Fields's survey was the correct location of the boundary line and stated that this finding was not supported by evidence in the record. But Fields is a licensed land surveyor who conducted extensive research prior to surveying the disputed area. He located the boundary line based on his observations and expertise. The court also heard witness testimony and had the exclusive ability to assess their credibility. Further, the trial judge himself visited the property and walked around. Given the record, it was not clearly erroneous to determine that Fields's survey was the correct location of the boundary line.
It was within the trial court's discretion to believe certain witnesses to the exclusion of other evidence. The trial court determined that the evidence presented by Hoskins-Lewis was most credible and was the strongest indication of the correct boundary location. There was substantial evidence in the record adequate to support the trial court's conclusion. The Court of Appeals erred by improperly substituting its own judgment for that of the trial court.
III. Raven Cliff Hollow Does Not Contain a Continuous Flow of Water, Rendering Spurrier v. Hodges Inapplicable.
The Wellses contends that the Court of Appeals correctly applied Spurrier v. Hodges to the boundary dispute. 90 S.W. 559 (Ky. 1906). Spurrier held that where a waterway or channel forms the boundary between two properties, sudden or violent artificial changes to the channel will not disrupt the boundary-the boundary will remain in its original position. Id. at 560. Raven Cliff Hollow, also referred to as Raven Cliff Hollow Branch, forms the boundary between the Wellses' and Hoskins-Lewis's property, and the Wellses argue that "branch" is commonly defined as a stream that flows into a larger stream. The Wellses also propose that the predecessor property owners would not have referred to the area as a "branch" if it was not a wet weather drain. Hoskins-Lewis argue that Raven Cliff Hollow is not a continuously running stream, thereby rendering Spurrier inapplicable.
Anthony Bowling and Phillip Lewis testified that there was no spring or continuous source of water at the beginning of Raven Cliff Hollow. The trial judge personally went to the disputed area and did not observe any water. Further, the trial court noted that there was no testimony by any party as to the location of a spring or beginning tributary at any point that would produce a continuous source of water. Surveyor Felts even testified that there was no water in the drain on the occasions he was there.
*863 In her dissent, Court of Appeals Judge Lambert pointed out that Spurrier only applies when avulsion or artificial changes to land occur in riparian zones and the case has no effect when the altered boundary never featured a continuous flow of water. We are inclined to agree. In the Court of Appeals' opinion, the court noted that the mining occurred in and around the drain known as Raven Cliff Hollow, which is a tributary to Greasy Creek when water is present (emphasis added). Further, the Court of Appeals stated that Raven Cliff Hollow is a drain for the hillside it is located on that flows to Greasy Creek, and logically would only have water in it during periods of rain. The Spurrier case involved a creek, which is a continuous flow of water. But Raven Cliff Hollow only became a drain when there was rainfall, and therefore was not a continuous flow of water. This case is readily distinguishable from Spurrier but even if that case applied it would not change our conclusion.
IV. The Court of Appeals Erred in Determining That Hoskins-Lewis Had the Sole Burden of Proof and Failed to Meet it.
Hoskins-Lewis argues that the Court of Appeals erred in holding that Hoskins-Lewis had the sole burden of proof in proving the location of the boundary line. Hoskins-Lewis initially filed this action to recover coal royalties for coal they believed was extracted from their property. Once the Wellses were brought into the case, it was the Wellses that introduced a claim to quiet title to the property claimed by Hoskins-Lewis. Hoskins-Lewis argue that the Wellses asserted a quiet title action in their counterclaim and therefore the Wellses have the burden of proof. While the claim was labeled as such, record title has never been contested in this case, making the doctrine of quiet title inapplicable.
The Court of Appeals stated that "[Hoskins-Lewis] failed to meet their burden of proof in that their reliance upon the Fields' survey was totally misplaced and otherwise, as a matter of law, insufficient to establish their boundary based upon the legal descriptions set forth in the respective deeds...." However, both Hoskins-Lewis and the Wellses were asserting specific locations of the boundary line. "In an action to establish a boundary line, the party asserting a specific location of such a line bears the burden of presenting credible evidence to establish that location." Hall v. Allen, 771 S.W.2d 50, 52 (Mo. 1989).
In Morrow v. Dodson , two landowners disputed the ownership of a parcel of land located in between their properties. 430 S.W.2d 771 (Ky. 1968). Dodson and Garland brought suit against Morrow to determine ownership of the disputed parcel. The trial court determined that the disputed parcel belonged to Dodson and Garland, and Morrow appealed. Our predecessor court reversed the trial court, holding that Dodson and Garland made no effort to establish the location of the boundary line of their property. Morrow, who filed a counterclaim to quiet title, successfully met his burden to establish title to the land. Therefore, the court placed the burden on both parties to establish their title to the disputed land. While the Wellses introduced the boundary dispute claim, both parties are alleging specific locations of the boundary line, which places a burden on both to persuade the fact-finder.
Aluminum Co. of America v. J.S. Frazer involved a trespass dispute in which the appellant, Aluminum Company of America (ALCOA), filed a complaint asserting mineral and surface rights to a tract of land and charged that the defendant, J.S. Frazer, was trespassing on the tract.
*864 328 S.W.2d 142, 143 (1958). ALCOA also sought to quiet title to the property. Id. In response, Frazer filed a counterclaim asserting his ownership of the tract and praying to quiet his title. Id. The case ultimately rested on the correct location of the boundary line between parcels owned by ALCOA and Frazer. Id. The Court held that "[a] party must allege and prove legal title in himself if the answer denies his title." Id. at 144. Further, "[t]he burden rests upon the defendant who claims title in a counter-claim to establish the title which he has set up to defeat the plaintiff's claim of ownership." Id.
While Aluminum involved actions to quiet title, the principles established in Aluminum can be applied to the current case. Hoskins-Lewis filed a claim and, once interpleaded as a defendant, the Wellses claimed ownership of the disputed property. Even though the Wellses initially presented a claim of ownership to the disputed property, Hoskins-Lewis also had the burden of proving title to the property. Both parties have to prove ownership if it is contested. Therefore, in a boundary dispute, the burden rests on both parties to present evidence establishing the location of a boundary line.
Hoskins-Lewis met the burden of proof in this case by presenting evidence to support their proposed location of the boundary line. The trial court relied on Fields's survey, the testimony of Phillip, Noah and Teresa Lewis and Albert and Ruth Wells, and its personal observations of the area in question in making its ruling. As established, Fields's survey relied upon by the trial court was not based upon erroneous assumptions because Fields used the parties' deeds and his experience and knowledge as a professional land surveyor in order to mark the boundary line. Hoskins-Lewis met their burden of proof and the trial court's reliance on the evidence was not erroneous.
V. The Trial Court's Holding that Hoskins-Lewis is Entitled to Royalties for the 25,054.20 Tons of Coal Was Not Clearly Erroneous.
The initial royalties deposited with the Leslie Circuit Court Clerk totaled approximately $298,000. In addition to the royalties held by the court clerk, the trial court order granted judgment in favor of Hoskins-Lewis against ICG for 25,054.20 tons of coal mined from part of the disputed area. The trial court denied ICG's Motion to Alter, Amend or Vacate the portion of the judgment referring to the 25,054.20 tons. The trial court determined that the 25,054.20 tons of coal were mined from the property owned by Hoskins-Lewis.
There were three potential boundary lines in this case, all of which were described and represented by maps introduced as exhibits: (1) the line located by ICG/Ekenco; (2) the line located by Wellses/Felts; and (3) the line located by Hoskins-Lewis/Fields. The royalties from the mining in the area between the ICG/Ekenco line and the Wellses/Felts line were placed in escrow with the Leslie Circuit Court Clerk. The coal mined from the area between the ICG/Ekenco line and the Hoskins-Lewis/Fields line is the 25,054.20 tons referred to in the trial court order. The royalties for this tonnage were paid to Ruth Wells. After the trial court entered the judgment, the royalties for this tonnage were paid into court-$109,871.67 paid by the Wellses and $27,786.13 by ICG.
On appeal, ICG again disputes this payment to Hoskins-Lewis, stating that the 25,054.20 tons of coal was mined from property not within the boundaries of the tract described in the Hoskins-Lewis complaint. ICG also claims that it made no *865 defense as to any property outside the Raven Cliff Hollow tract because there was no need to do so as the only tract described in the Hoskins-Lewis complaint described the Raven Cliff Hollow area.
However, on June 11, 2013, Hoskins-Lewis propounded a second set of interrogatories to ICG and the second interrogatory requests that ICG "[s]tate the number of tons mined and removed from the area designated as B and D on the attached map and the party paid royalties for this tonnage." Therefore, ICG specifically knew going into trial that this tonnage and area was involved in the dispute.
The trial court considered testimony from the land surveyors and witnesses regarding the newly-disputed area and was tasked with the role of assessing credibility and weighing the evidence. ICG argues that the trial court ignored the clear descriptions and plats in the coal leases of the parties. But each of the parties' coal leases contained the property descriptions from their deeds, which were in the record and considered by the trial court. Further, the professional surveyors used the property descriptions in forming their respective opinions as to the location of the boundary line. Therefore, these descriptions were not ignored by anyone. The trial court's determination that Hoskins-Lewis is the owner of the newly-disputed area was a finding of fact, and findings of fact that are supported by substantial evidence are not clearly erroneous. Moore, 110 S.W.3d at 354. Since the evidence relied upon by the trial court was adequate to support its conclusion, the trial court's finding on the additional coal royalties will not be set aside.
CONCLUSION
At trial, the court was faced with conflicting evidence regarding the boundary between the two properties. The trial court did not err in determining the boundary line in the manner that it did. As the trial court was in the best position to assess credibility and make findings of fact, the Court of Appeals exceeded its scope of review by reversing the trial court. It is immaterial that the Court of Appeals' majority would have decided the case differently because substantial evidence supports the trial court's findings. Accordingly, we reverse the Court of Appeals and reinstate the Leslie Circuit Court's Findings of Fact, Conclusions of Law and Judgment.
All sitting.
All concur.

C.W. Hoskins Heirs is a general partnership comprised of Greg Hoskins, Constance Wells, Walter S. Hoskins, and Gary Hoskins.

The Lewises' deed refers to the boundary line as "Raven Cliff Branch" and the Wellses' deed identifies the boundary as "Raven Cliff Hollow." The parties do not dispute that the boundary between the Hoskins-Lewis's and Wellses' property begins at the head of Raven Cliff Hollow and continues down its meanders to Greasy Creek. In this opinion, the area will be referred to as "Raven Cliff Hollow."

The royalties were placed in an account bearing interest at variable rates on December 17, 2012. The most recent balance in the trial court record states that on December 31, 2014, the balance was $298,168.60.

The Wellses cite 201 KAR 18:150 § 7 in their brief, but the requirements for professional surveyors when conducting a land survey are located in § 6, not § 7.