RENDERED: SEPTEMBER 18, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0350-DG

ADAM WHEELER; COURTNEY L. GRAHAM; AND STRAUSE LAW GROUP, PLLC — APPELLANTS

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2023-CA-1147
BULLITT CIRCUIT COURT NO. 20-CI-00486

CITY OF PIONEER VILLAGE, KENTUCKY — APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

This matter comes before the Court upon discretionary review from the decision of the Kentucky Court of Appeals in a wage and hour dispute. At issue are questions of statutory interpretation and discretion regarding liquidated damages, the application of post-judgment motions to alter or amend, the determination of reasonableness for attorney's fees, and the appropriate consideration of fee-shifting principles in the context of employee compensation claims.

Appellant, Adam Wheeler, timely brought forth overtime compensation claims against the City of Pioneer Village before the Bullitt Circuit Court. In 2022, following a four-day bench trial spanning most of 2022 (March 3 and 4,

June 7, October 4), the trial court entered judgment in favor of Wheeler on several portions of the wage claims. The judgment was subsequently amended to correct calculation errors and to reflect a municipal ordinance that had been in evidence governing the forfeiture of accrued sick leave upon termination. The trial court also granted "reasonable" attorney's fees, but later reduced the requested award to $2,500.00, an amount far below what the record suggests was commensurate with the work performed.

On appeal, the Kentucky Court of Appeals affirmed the trial court's denial of liquidated damages, sick leave wages, and certain awards of vacation and overtime pay. The Court of Appeals reversed only as to the reconsideration of interest and attorney's fees, remanding for reconsideration on those issues.

This opinion addresses (1) the appropriateness of post-judgment motions to alter or amend based on existing evidence with regard to calculations and categories of compensation, (2) the statutory framework governing liquidated damages within the wage and hour protection statute KRS[1] 337.385, (3) the statutory interest on judgments per KRS 360.040, and (4) standards for assessing reasonable attorney's fees and fee-shifting in employee compensation claims. For the reasons set forth below, we affirm the judgment of the Court of Appeals in its entirety.

---

[1] Kentucky Revised Statutes.

## I. FACTS AND PROCEDURAL BACKGROUND

Appellant, Adam Wheeler ("Wheeler"), worked for the City of Pioneer Village ("the City") as a police officer for approximately ten years ending in August 2018. During Wheeler's employment, officers would be paid for working forty (40) hours each workweek while working thirty-six (36) hours one week and forty-four (44) hours the next, without overtime wages for the hours in excess of forty (40).

The City's representatives held a meeting where they discussed the 36/44-hour work schedule as a manner of allocating the preferred 12-hour shifts without incurring overtime; however, no evidence was presented that an agent designated by the police, or a representative of any collective bargaining agent was present when the work schedule was discussed. After complaints, the City participated in a 2019 audit during which it learned it was required to pay overtime under the existing scheduling routine with the officers for the weeks they worked over forty (40) hours. Checks were issued to the employees which reflected amounts submitted by the auditor. After the 2019 audit, the City revised its overtime payroll procedures. Wheeler rejected his check as inaccurate, contested the hours and categories of compensation it reflected, and brought suit. Per KRS 413.120, consideration of statutory claims are limited to be brought "within five years after the cause of action accrued" thus limiting his claim to employment from July 2015 through August 2018.

The 2009 pre-existing KRS 337.285 statute allowed a "collective bargaining agreement, memorandum of understanding, or any other agreement

3

between the employer and representative of the county or city employees" to control certain aspects of hourly wage agreements. In 2016, during a portion of Wheeler's employment, KRS 337.285(13) was added and the statute, as amended, read:

(a) A law enforcement department of a consolidated local government organized under KRS Chapter 67C shall not be deemed to have violated subsection (1) of this section with respect to the employment of a peace officer if:
  1. The officer works eighty (80) hours or less in a work period of fourteen (14) consecutive days; and
  2. The law enforcement department and a representative of a collective bargaining unit certified under KRS 67C.408 that includes the officer agree to the exception.
(b) It is the intent of this subsection to allow the employment of a peace officer for longer than forty (40) hours in any seven (7) consecutive days within a fourteen (14) day work period without incurring the obligation to pay a rate of not less than one and one-half (1- ½) times the officer's hourly wage under subsection (1) of this section.

KRS 337.285(13) (2016).

While (a)(1.) is not in dispute as the work schedule, the City failed to demonstrate (a)(2.) was satisfied. Wheeler maintained he consented to the schedule but not to the forty (40) hours of straight pay for both weeks regardless of excess hours worked on the alternating weeks. No evidence of a representative agreement was presented.

The mayor, the city clerk, and the chief of police acknowledged the rotating 36/44 work schedule and that employees were told to put the four hours of overtime onto the 36-hour workweek. Additionally, the clerk would regularly correct the officers' timesheets and the chief would approve her corrected timesheets, relying on her corrections without further review by the officers. Examples of timesheets with additional hours worked were submitted

4

into evidence as altered and initialed by the clerk and police chief. The clerk conceded to changing officer timesheets as a regular practice and that she had implied authority to do so from the police chief.

The City maintained its position that it owed nothing under the circumstances relying upon Wheeler's signed timesheets and his failure to dispute his pay within six days. In March, the trial court found in favor of Wheeler for failure to be timely paid in violation of KRS 337.285. The statute requires that

> [n]o employer shall employ any of his or her employees for a work week longer than forty (40) hours, unless such employee receives compensation for his or her employment in excess of forty (40) hours in a work week at a rate of not less than one and one-half (1-1/2) times the hourly wage rate at which he or she is employed.

KRS 337.285(1).

The trial court found that the City was not exempt from paying overtime to police officers as allowed under KRS 337.285(13)(b) because they failed to introduce evidence that either Wheeler had agreed to the practice or that the practice was the result of negotiations with a collective bargaining unit as required by the statute. The trial court further found Wheeler failed to meet the burden of proof as to additional overtime beyond the four (4) hours on the rotating schedule.

Wheeler was denied liquidated damages as "inappropriate given Wheeler's express written statements" referencing his time cards, the City's "willingness to comply with the audit of the Department of Labor, Office of Workplace Standards" and the testimony which "showed that Pioneer Village

5

clearly thought that Wheeler was part of the group which had agreed in their meeting to work the 44 hours in one week and the 36 hours in the other week."

Without a specific breakdown or reference to calculations, the trial court awarded Wheeler $21,129.22 in overtime wages, $2,620.00 in unpaid vacation, and $560.00 in unpaid accrued sick leave. The City was found to have acted in good faith and the trial court did not find liquidated damages were appropriate for Wheeler per KRS 337.385. Wheeler's request for retirement hazardous duty pay was denied for failure to meet the burden of proof. The total initial award for Wheeler amounted to $24,309.22.

The City timely filed a motion to amend the calculations. It correctly identified Wheeler had been paid for the straight time amount of the four hours and was merely missing the fifty percent (50%) increased rate that is allocated to the four hours as designated overtime and as adjudicated due him per the Judgment. The language of the March Judgment stating "remaining unpaid wages are four (4) hours of overtime every other week spanning July 2015 through July 2018" mirrored "the remaining one-half times his rate for every four (4) hours of overtime biweekly" in the July 13, 2023, Order. Forty hours were paid on the 36-hour work weeks and 40 hours were paid on the 44-hour work weeks. Having been paid for eighty (80) regular rate hours, the difference was the missing percentage described above. Wheeler contested the correction of the Order because the City did not present or argue these calculations during the trial.

6

Subsequently, the court issued an Order in July 2023 overruling in part and granting in part Pioneer Village's CR[2] 59.05 motion to correct the calculations and apply the ordinances, which corrected the calculations. The July 2023 Order reduced the overtime award from $21,129.22 to $2,823.57, left the vacation award in place, and eliminated the unpaid sick leave award. The vacation time award was $3,620.00 for a total award adjusted from $24,309.22 to $5,443.57.

The sick leave award was eliminated per Ordinance 99-003. The ordinance had been submitted into evidence during trial and eliminated sick leave upon termination. Notably the attempt to also eliminate vacation pay under Ordinance 2017-06 was denied as not applicable or in place as to the dates of employment in issue.

Having previously granted "reasonable" attorney's fees in the original judgment, the trial court rejected the submitted invoices and ordered a mere $2500.00 for "attorney fees and costs in this matter," deeming counsel's rate of $365.00/hour to "exceed a reasonable hourly rate." Vacation time was left undisturbed.

On appeal, the Court of Appeals affirmed the denial of liquidated damages, denial of sick leave wages, denial of retirement hazardous duty pay, reduced overtime wage award, and vacation time wage award. However, it

---

[2] Kentucky Rules of Civil Procedure.

reversed and remanded for reconsideration of the issues of statutory interest on the judgment per KRS 360.040 and attorney's fees and costs.

## II.    STANDARD OF REVIEW

The issue concerning statutory interpretation is a question of law we review de novo. *See Kentucky Emp. Mut. Ins. v. Coleman*, 236 S.W.3d 9, 13 (Ky. 2007).  When this Court reviews questions of statutory interpretation de novo, it grants no deference to the lower courts. *Louisville & Jefferson Cnty. Metro. Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 535 (Ky. 2007).

The remaining issues are to be analyzed as follows and as articulated below.  Under CR 52.01, "[i]n all actions tried upon the facts without a jury . . . , the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment." *Ellington v. Becraft,* 534 S.W.3d 785, 790 (Ky. 2017).  "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01. "A trial court's findings are not clearly erroneous if they are supported by substantial evidence." *Ellington*, 534 S.W.3d at 790 (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).

## III.    ANALYSIS

### A. The trial court's alteration to the judgment per the City's CR 59.05 Motion to Amend, Alter, or Vacate correcting calculations and applying existing law was appropriate.

A trial court's ruling on a motion to alter, amend, or vacate a judgment under CR 59.05 is reviewed for abuse of discretion. *Rumpel v. Rumpel*, 438

8

S.W.3d 354, 365 (Ky. 2014). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

**Appropriateness of CR 59.05**

Wheeler filed a timely motion pursuant to CR 59.05 seeking to alter or amend the judgment to correct certain errors in calculation and address the application of an ordinance introduced into evidence during trial. A motion to alter, amend, or vacate a judgment allows the trial court to correct its own errors of law or fact, or to prevent manifest injustice before appellate review. *Gullion v. Gullion,* 163 S.W.3d 888, 892 (Ky. 2005). It preserves error for appeal and ensures an opportunity for trial courts to address, as in this situation, potential calculation and statutory missteps.

While this is not a case of mere typos, miscalculation is analogous to clerical mistake. A court may amend and correct a clerical mistake at any time because the time restrictions of rules governing motions to amend a judgment do not apply. *Benson v. Lively*, 544 S.W.3d 159, 164 (Ky. App. 2018). This is distinguishable from *Rumpel*, the example offered by Wheeler. *Rumpel v. Rumpel*, 438 S.W.3d 354 (Ky. 2014). In *Rumpel*, the court acknowledged:

> CR 59.05 accords the trial court broad discretion to "alter or amend a judgment," so as to correct manifest errors, to address intervening changes in controlling law, to take into account newly discovered but previously unavailable evidence, or otherwise to prevent manifest injustice, [but] a party cannot invoke CR 59.05 "to raise arguments and to

9

introduce evidence that should have been presented during the proceedings before the entry of judgment."

*Rumpel,* 438 S.W.3d at 365–66 (citing *Gullion,* 163 S.W.3d at 893); *Hopkins v. Ratliff,* 957 S.W.2d 300 (Ky. App. 1997). The former wife of Kaven Rumpel had submitted into evidence a mortgage statement from which the court computed a further increase in marital property beyond what was on the face of the statement. This continued increase in value could, and should, have been raised at trial. *Rumpel,* 438 S.W.3d at 366. The trial court incorrectly amended the judgment to reflect the further increase from the timing of the submitted evidence to the date of the judgment. In other words, it used the amounts submitted into evidence to calculate a change from the *actual* evidence to the increased amount inferred from the pendency of the trial.

Here, the trial court only used the actual amounts from the evidence submitted at trial. The paystubs Wheeler submitted were used to verify he had, in fact, been paid the base 80 hours of straight time over each two-week period. Because the time was being shifted to account for the actual 36/44 scheme, the only pay missing per the March judgment award was the overtime rate on top of the four (4) hours of base pay previously received. Pay stubs and pay rates originally submitted by Wheeler, and confirmed by the City, led the trial court to amend its order. The ability to do so is the essence of the CR 59.05 motion with limitations. The trial court did not admit new evidence, did not conjecture or extrapolate amounts in addition to the evidence, and merely recalculated the *numbers* to align with the *words*.

10

While one may question the City's apparent inability to have accurately computed the pay owed under these circumstances and its own ordinance sooner in time, the trial court appropriately integrated the City's ordinance into its amended judgment, thereby ensuring consistency with the applicable governing law. Accordingly, the trial court's decision to grant the motion in part and enter an amended order was well within the scope of CR 59.05. The corrections were not the product of new evidence or untimely theories, but rather of the court's duty to render a judgment that accurately reflects both the record and the applicable law.

Because the aforementioned corrections were rooted in evidence presented at trial, and because CR 59.05 authorizes correction of manifest errors, the trial court acted within its discretion. The initial judgment contained mathematical errors in the computation of the overtime award. The motion to alter or amend squarely presented those errors on the record, and the trial court was entitled to correct them before appellate review. As none of this amounted to "arbitrary, unreasonable, unfair, or unsupported by sound legal principles" adjustments, no abuse of discretion is found. *Goodyear*, 11 S.W.3d at 581.

**Sick Leave**

In addition, the ordinance governing the forfeiture of accrued sick leave upon termination had been admitted into evidence at trial but was not accounted for in the original order. Whether sick leave was properly denied depends upon the appropriate application of the ordinance. Questions of law

11

are reviewed de novo. *Louisville Metro. Health Dep't. v. Highview Manor Ass'n, LLC*, 319 S.W.3d 380, 383 (Ky. 2010).

The trial court recognized the City of Pioneer Village Ordinance submitted in The City's Exhibit 2 during trial requiring forfeiture of sick leave upon termination. The Ordinance, 99-003 Section IV(G) on page 2 was adopted in 1999, submitted during trial, and governed sick leave in this instance.

An ordinance lawfully enacted and admitted into evidence should be taken into account by the trial court. The trial court initially overlooked the ordinance, but later corrected this error through its amended judgment. The forfeiture of the sick leave award was proper.

**Retirement Hazardous Duty Pay**

The denial of the award for retirement hazardous duty pay is one of statutory interpretation, which we review de novo. *Jewell v. Ford Motor Co.,* 462 S.W.3d 713,715 (Ky. 2015).

While Wheeler characterized retirement hazardous duty pay as "wages," Kentucky law has drawn a distinction. "Benefits, which include such things as retirement plans, health and disability insurance, and even life insurance, are . . . not considered to affect the pay, wages, or compensation of the employee but are considered an additional benefit." *Caldwell Cnty. Fiscal Ct. v. Paris*, 945 S.W.2d 952, 954 (Ky. App. 1997). This is consistent with the exclusion of retirement plans and other benefits from the statutory definition under Kentucky's Workers' Compensation Act's definition of "wages." KRS

12

342.0011(17). "'Wages' are 'money payments for services rendered, . . . the reasonable value of board, rent, housing, lodging, and fuel or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer to the extent the gratuities are reported for income tax purposes." *Jewell*, 462 S.W.3d at 715 (citing KRS 342.140(6)) (noting the term "wages" is similarly defined in KRS 342.0011(17)). It is also persuasive that the federal courts in this state, when applying Kentucky law, also found KRS 337.010(1)(c) to exclude "benefits such as retirement plans, health and disability insurance, and life insurance." *Francis v. Marshall*, 684 F.Supp.2d 897, 911 (E.D. Ky. 2010). Kentucky precedent is clear. Retirement benefits are "fringe benefits," not "wages" within the meaning of KRS 337.010(1)(c)(1).

In sum, Kentucky law distinguishes between fringe benefits and wages. The statutory language of KRS 337.010(1)(c) is consistently interpreted to exclude retirement benefits from the definition of "wages." Without an enforceable contractual entitlement, this interpretation aligns with the broader statutory scheme reserving "wages" for direct monetary compensation for services rendered, while treating retirement and similar benefits as additional, non-wage compensation. Because Wheeler's claim rests on an incorrect classification, his entitlement to retirement hazardous duty pay as wages fails as a matter of law, and the Court need not reach the issue of the amount of any award.

13

**B. Liquidated Damages Under KRS 337.385 Considers the Court's Discretion.**

We review statutory interpretation de novo. *Active Care Chiropractic, Inc. v. Rudd*, 556 S.W.3d 561, 564 (Ky. 2018), *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). As the plain meaning of the statutory language is presumed to be the intent of the legislature, the first rule is the plain-meaning rule. *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky. 2005). If the meaning is plain, then the court cannot base its interpretation on any other method or source. *Id.* It is this Court's duty when interpreting statutes to:

> ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed. In other words, we assume that the [Legislature] meant exactly what it said and said exactly what it meant. Only when [it] would produce an injustice or ridiculous result should we ignore the plain meaning of a statute.

*Id.* (internal quotation marks and citations omitted).

The second rule of statutory construction is the whole-text rule. We have repeatedly stated that we "must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy." *Cosby v. Commonwealth,* 147 S.W.3d 56, 58 (Ky. 2004).

While the plain-meaning rule and whole-text rule may, at first glance, appear at odds, the intent of the legislature is the lodestar by which we are guided. *Samons v. Ky. Farm Bureau Mut. Ins. Co.,* 399 S.W.3d 425, 429 (Ky. 2013). We presume, of course, that the General Assembly intended for the statute to be construed as a whole and for all of its parts to have meaning.

14

*Lewis v. Jackson Energy Coop. Corp.,* 189 S.W.3d 87,91 (Ky. 2005). We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. *Layne v. Newberg,* 841 S.W.2d 181,183 (Ky. 1992). "[T]he use of the word 'shall' with reference to some requirements . . . is usually indicative that it is mandatory, but it will not be so regarded if the legislative intention appears otherwise." *Knox Cnty. v. Hammons,* 129 S.W.3d 839, 843 (Ky. 2004) (quoting *Skaggs v. Fyffe,* 98 S.W.2d 884, 886 (Ky. 1936)).

The statute KRS 337.385, in its entirety, contains five sections, each one to two sentences long. The first and second sections were created together and, in 2013, an additional punitive award for forced labor further enhanced the damages available in that circumstance. Section (1) of the statute provides:

> any employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS 337.020 to 337.285 shall be liable to such employee affected for the full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, *for an additional equal amount as liquidated damages*, and for costs and such reasonable attorney's fees as may be allowed by the court.

(emphasis added). But it continues in the second section,

> If, in any action commenced to recover such unpaid wages or liquidated damages, the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he or she had reasonable grounds for believing that his or her act or omission was not a violation of KRS 337.020 to 337.285, *the court may, in its sound discretion, award no liquidated damages,* or award any amount thereof not to exceed the amount specified in this section.[3]

---

[3] In 2013, the General Assembly added "Except as provided in subsection (3) of this section" to section 1 and provided for treble damages in scenarios of forced labor. The portions of (1) and (2) had previously coexisted as part and parcel of KRS 337.385

(emphasis added).

Thus, we begin our inquiry with the plain language of KRS 337.385. As the trial court found the City in violation of the statute, liquidated damages became available. Appellant correctly asserts a portion of KRS 337.385 states that an employer who pays an employee less wages and overtime compensation than they were entitled under KRS 337.020 "**shall** be liable to such employee affected . . . for an additional equal amount as liquidated damages." (emphasis added). However, that is not the end of this statute or the analysis.

While section (1) provides liquidated damages, section (2) allows the trial court discretion to award no liquidated damages or an amount less than specified "in this section." As no amount is authorized in section (2), the words "this section" directs us to the statute as a whole and allows the court to award an amount from zero, or "no liquidated damages," to an "equal amount" of the wage award determination. When the statute is read beyond "a single sentence," it comports and does not conflict or render an "absurd" result. *Cosby,* 147 S.W.3d at 59; and *see Layne,* 841 S.W.2d at 183. Upon a finding of good faith or reasonable belief, the liquidated damage award becomes a discretionary amount limited to the parameters of the statute.

Liquidated damages are viewed under most employment statutes, such as the ADEA[4], as primarily punitive and therefore only awarded for intentional

---

when a concern for human trafficking prompted steeper fines when forced labor is found than the amount equal to the missing pay was desired.

[4] Age Discrimination in Employment Act.

16

misconduct or where the employer has not acted in good faith. *See* KRS 411.186. As the Court of Appeals properly referenced, the Kentucky statutes under KRS Chapter 337 mirror the language of 29 U.S.C.A. §260 stating:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216.

KRS 337.385 mirrors the Section 216 provision requiring "the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C.A. §216(b).

Pursuant to KRS 337.385, the court had sound discretion to determine whether the City's actions were in good or bad faith and, subsequently, whether to award the damages, we review for clear error. "It is not for us to determine whether or not we would have reached a different conclusion, faced with the same evidence confronting the trial court." *Church & Mullins Corp. v. Bethlehem Minerals Co.*, 887 S.W.2d 321, 323 (Ky. 1992). Proper regard must be given to the "opportunity of the trial court to judge the credibility of the witnesses," and we acknowledge "[t]his task is exclusively within the province of the trial court." *C.W. Hoskins Heirs v. Wells,* 560 S.W.3d 852, 856 (Ky. 2018). Thus, the question is limited to whether the trial court's decision, after assessing the credibility of the witnesses, was supported by substantial evidence. *Id.*

17

The trial court relied upon evidence of Wheeler's timesheets that bore his signature under a statement asserting their accuracy. Though Wheeler testified to his belief that he was owed overtime, he admitted repeatedly submitting the signed timesheets reflecting a 40-hour week. The City participated in the 2019 audit, learned it was required to pay overtime, issued checks to the employees which reflected amounts submitted by the auditor, and revised its overtime payroll procedures. While Wheeler correctly identifies much of this behavior as post-violation, the court reasonably viewed the City's holding of the meeting regarding schedules with significant weight, and the issuance of back-pay checks and policy changes as further evidence of good faith. The court also credited testimony regarding an understanding between the police chief and officers: in exchange for permission to work preferred 12-hour shifts, officers reported two 40-hour weeks rather than the actual 36- and 44-hour weeks. While employees cannot waive statutory overtime, the court permissibly viewed this arrangement as supporting the City's good-faith belief that its practices were lawful.

As the City employer showed to the satisfaction of the court that the act or omission giving rise to its actions was in good faith and that it had reasonable grounds for believing the action was not in violation, the court acted within its discretion to award no liquidated damages. On this record, the denial of liquidated damages was not clearly erroneous because it was supported by substantial evidence to which the trial court gave credibility and weight.

18

**C. Award of Statutory Interest Follows Entry of Judgment per KRS 360.040.**

We agree with the Court of Appeals' holding that statutory interest per KRS 360.040 is applicable to Wheeler's claim. KRS 360.040 provides a judgment "shall bear six percent (6%) interest compounded annually from the date the judgment was entered." The purpose is to compensate the judgment creditor for judgment debtor's use of his money. *Doyle v. Doyle,* 549 S.W.3d 450, 458 (Ky. 2018). Per the trial court, the claim "should just be a matter of math." A "liquidated claim is 'capable of ascertainment by mere computation, can be established with reasonable certainty, [and] can be ascertained in accordance with fixed rules of evidence and known standards of value.'" *Id.* at 455 (quoting *3D Enter. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.* 174 S.W.3d 440, 450 (Ky. 2005)). The CR 59.05 Motion to Amend's own assertion relies upon "known standards of value," so the unliquidated damages assessed by the court based on the actual loss suffered became liquidated and an issue of "mere computation." *Id.* The judgment falls squarely within KRS 360.040(1). "With respect to appellate rulings upholding the original determination of liability, but adjusting on the existing record the amount of the award, . . . the clear majority position is that post-judgment interest accrues from the <u>original</u> judgment." *Commonwealth, Justice & Pub. Safety Cabinet, Dep't of Kentucky State Police v. Gaither,* 539 S.W.3d 667, 674

(Ky. 2018) (emphasis added).[5]  Therefore, the remand to the trial court for reconsideration of interest on the judgment and attorney's fees and costs is appropriate and affirmed.

### D. Attorney's Fees Are Mandated by Statute but Subject to Reasonableness Review.

Wheeler also challenges the trial court's determination of attorney's fees. The award of attorney's fees is not in question but the amount.  Kentucky law makes clear that a trial court's discretion in setting fees is not unlimited. When a statute authorizes or mandates an award of "reasonable" attorney's fees, granting these awards is a matter of law and reviewed de novo; however, the awarded amount is reviewed to determine "whether the circuit court's determination constitutes an abuse of discretion." *Hunt v. N. Am. Stainless*, 482 S.W.3d 796, 799 (Ky. App. 2016).

The amount must be anchored in the evidence and guided by established factors.  "In order for us to review the court's exercise of discretion, the district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) ("It remains important . . . for the district court to provide a concise but clear explanation of its reasons for the fee award.").

---

[5] The estate of a murdered police informant's successful award of post-judgment interest started to accrue on the original award date despite the reinstated award resulting in a recovery lower than the original award. *See Gaither*, 539 S.W.3d at 676.

20

In this case, the Court of Appeals succinctly outlined the following:

> Shortly after the March 2023 Order, but before the July 2023 Order, Officer Wheeler's legal counsel requested $1,356.35 in costs and $91,031.50 in fees. She supported her motion/notice with an hourly breakdown of 299.10 hours performed from three attorneys ($325 to $365/hour), five law clerks ($100 to $165/hour), and two paralegals ($165/hour). She tendered a personal affidavit of her legal experience and examples of similar rates for similar work in the same region.

The trial court's August 2023 Order determined the request for $91,031.50 in fees was not reasonable in relation to the claim, an award of $5,443.57, and that Officer Wheeler's legal counsel's rate of $365.00/hour exceeded "a reasonable hourly rate." The court awarded $2,500.00 in combined attorney's fees and costs but did not elaborate on how it arrived at this amount. On appeal, Officer Wheeler's counsel argues that the trial court abused its discretion by combining the fees with costs and by failing to support or explain the award of $2,500.00. While the trial court has a great deal of discretion in regard to fees, in this case, we must agree.

As discussed, KRS 337.385(1) holds an employer liable for failing to pay an employee full and fair compensation and "costs and such reasonable attorney's fees as may be allowed by the court." KRS 337.385(1).

This Court has described a "lodestar" method of calculating reasonable attorney's fees in employment claims as consisting of the product of counsel's reasonable hours, multiplied by a reasonable hourly rate, thus providing a "lodestar" figure which may then be adjusted to account for various special factors in the litigation. *Meyers v. Chapman Printing Co.,* 840 S.W.2d 814, 826 (Ky. 1992) (citing the analysis in *Hensley v. Eckerhart,* 461 U.S. 424 (1983)).

21

Although the court recognized Wheeler's entitlement to an award of "reasonable" fees under the governing wage and hour statute, it reduced the fee petitioned to a flat $2,500.00 without explanation.

Here, the trial court's drastic reduction of a detailed petition without findings fails to satisfy those requirements. On remand, the trial court should closely evaluate the record of the litigation, including the hours devoted to discovery, the procedural hurdles presented, continuances filed by the defense, and the preparation necessary to present a wage-and-hour case at trial. Such cases are often intensive, involving review of records, examination of statutory and local ordinances, and preparation of multiple witnesses. To disregard the scope of that work by arbitrarily capping the fee risks undermining the statutory scheme itself.

It bears emphasis that the purpose of fee-shifting provisions in wage and hour laws is not merely to compensate prevailing counsel, but to ensure meaningful enforcement of the law. If awards are untethered from the actual work required, employees — who by statute are guaranteed their earned wages — may be unable to secure representation. Likewise, employers determined to have acted unlawfully might be incentivized to prolong litigation, knowing that counsel for employees may never be adequately compensated relative to the work performed.

This Court has since adopted the "lodestar" method that attorney's fees awarded should consist of the product of counsel's reasonable hours multiplied

by a reasonable hourly rate, which may then be subject to adjustment for special circumstances. *Meyers,* 840 S.W.2d at 826.

KRS 337.385 mandates "reasonable attorney's fees" to prevailing employees reflecting legislative judgment that wage protections must be meaningfully enforceable. That enforcement depends on ensuring employees can secure competent representation. Wheeler's counsel submitted a detailed affidavit documenting nearly 300 hours of work at prevailing market rates. The court reduced an affidavit of attorney's fees with a "contemporaneous record" of hourly breakdown and dates from $91,031.50 to $2,500.00 combined with costs without explanation. This arbitrary and unfounded reduction was an abuse of discretion.

The Court of Appeals correctly determined that the trial court's reduction was unsupported and remanded for reconsideration. We affirm that determination. On remand, it is recommended that the trial court assess the petition in light of the governing factors, articulate its reasoning with specificity, and award a fee that reflects the actual work performed and the legislative purpose of ensuring employees have access to effective legal representation in vindicating their statutory rights.

## IV.    CONCLUSION

The Court of Appeals faithfully applied the rules of statutory interpretation, the standards for CR 59.05 motions, recognition of statutory interest, and the lodestar framework for attorney's fees. Having affirmed in

23

part, reversed in part, and remanded for recalculation of interest and attorney's fees, its judgment is affirmed in all respects.

Lambert, C.J.; Bisig, Conley, Keller, Nickell, and Thompson, JJ., sitting. All concur. Goodwine, J., not sitting.

COUNSEL FOR APPELLANTS:

Courtney L. Graham
Strause Law Group PLLC

COUNSEL FOR APPELLEE:

Mark Edward Edison