Gerry Marie ELLIS, Appellant/Movant,

v.

Reginald K. MEEKS,
Appellee/Respondent.

No. 96–SC–848–DG.

Supreme Court of Kentucky.

Sept. 4, 1997.

Rehearing Denied Jan. 22, 1998.

Eric M. Jaegers, Teddy B. Gordon, Louisville, for appellant.

Kenneth L. Sales, Keith B. Hunter, Louisville, for appellee.

STEPHENS, Chief Justice.

The present case comes before this Court on discretionary review of decisions of the Court of Appeals and the Jefferson Circuit Court in an election contest action arising out of the May, 1996, primary election for the Democratic nomination for the 11th Ward Alderman in the city of Louisville. Appellant, Gerry Marie Ellis, participated in the primary along with Reginald Meeks and Marvin Williams. Ultimately, Meeks won the contest by receiving 815 votes to appellant's 807 votes. The third candidate, Marvin Williams, received 269 votes and he is not a party herein.

After the election, appellant learned that Meeks visited ten of the fifteen[1] precincts in the 11th Ward on election day and had en-

1. The fifteenth precinct, #N124, has only five voters and there were no votes cast from that precinct in the 11th Ward race. It is stipulated that Meeks did not visit that precinct on election day.

gaged in numerous acts which allegedly violated both KRS 117.235 and KRS 121.055. Consequently, pursuant to KRS 120.055, appellant filed an election contest complaint against Meeks on June 6, 1996, in the Jefferson Circuit Court. Meeks was served with process on June 8, 1996. However, the summons issued was defective in that it allowed Meeks twenty (20) days to respond, instead of the seven (7) days allowed by KRS 120.055.

On June 18, 1996, Ellis filed a Motion and tendered an Order for Default Judgment claiming that Meeks had failed to file a timely response as required by law. The Jefferson Circuit Court addressed the motion on June 24, 1996, and passed it to a hearing on July 9, 1996. Meeks filed his response on June 28, 1996. On July 3, 1996, appellant moved the trial court to strike Meeks' answer claiming it was not timely based upon his failure to file with his response a motion for enlargement of time as required by KRCP 6.02. The issue was briefed and the trial court issued an Interlocutory Order on July 15, 1996, allowing the answer to be filed.

On July 25, 1996, the case proceeded to trial at which time the parties stipulated to the following facts:

1. Reginald Meeks was within five hundred (500) feet of six polling places on the election day stated in the Complaint which comprises ten (10) of fifteen (15) precincts.

2. The purpose of his visit to the polling places, according to Reginald Meeks, was to deliver lunch to precinct workers at these polling places (boxes of chicken).

3. Reginald Meeks shook hands with some people including voters at the polling places and had conversations with people present, the substance of which is unknown.

4. Reginald Meeks was within the presence of more than nine (9) voters at these polling places.

5. Reginald Meeks did not verbally ask any voter to vote for him.

6. Reginald Meeks did not hand out campaign literature at the polling places.

7. Reginald Meeks did not have any visible campaign material within five hundred (500) feet of any of the polling places.

8. No voter changed a vote as a result of Reginald Meeks' actions.

9. Reginald Meeks provided lunch to precinct workers, but not to voters, however, the food was available to anyone present.

Each party submitted trial briefs, and on August 1, 1996, the trial court entered its Findings of Fact, Conclusions of Law and Judgment. The court determined that even if electioneering had occurred, the election should not be set aside without further proof that either the secrecy of the ballot was impaired or that Meeks' actions had an adverse impact on the results of the election. Citing *Sims v. Atwell*, Ky.App., 556 S.W.2d 929 (1977), the trial judge went further in saying that in order for appellant to meet the necessary burden of proof, she had to prove the number and identity of voters who were improperly influenced.

Regarding appellant's complaint that Meeks' conduct violated the Corrupt Practices Act, KRS 121.055, the trial judge determined that the remedy appellant sought for the alleged violation was not found in the election statutes, which provide for criminal penalties and fines. Moreover, the trial judge refused to strike Meeks' response, as such would have amounted to a default judgment. Ultimately, the trial judge determined that elections should not be lightly set aside, *Stanley v. Goff*, Ky., 324 S.W.2d 124 (1959), and dismissed appellant's election contest action.

An appeal was taken to the Court of Appeals of Kentucky which, in an unpublished Opinion and Order, affirmed the trial court's judgment. Concerning the electioneering claim, the court stated that the statute did not provide any penalty for violations and that it was up to the precinct officer to challenge Meeks' presence and order him to leave immediately. The court noted that there was no indication that this had occurred. Relying primarily on *Skain v. Milward*, 138 Ky. 200, 127 S.W. 773, 778 (1910), the court held that the evidence in the record failed to show fraud, intimidation, bribery, or violence to the extent that the election could

be adjudged unfair. In addition, based upon Meeks' stipulation, and the standard of review set forth in KRS 120.065, the court concluded that it could not be established that Meeks violated KRS 117.235.

In addressing KRS 121.055, the Corrupt Practices Act, the court stated that appellant could not prevail as she specifically stipulated that no voter changed a vote as a result of Meeks' actions. While finding Meeks' conduct to be deplorable in light of the public purpose underlying the election statutes, the court asserted that because a gap existed in the statutes with respect to this particular practice, it was up to the legislature, not the courts, to remedy the problem.

Finally, the court affirmed the trial court's decision regarding the issue of whether Meeks' answer should be stricken. The court concluded that if an error had been committed, it was at most, harmless, based upon the fact that appellant would have only been entitled to judgment, if it was appropriate under the law.

■ In this Court, appellant seeks to invalidate Meeks' nomination based upon violations of KRS 117.235, which prohibits electioneering, and KRS 121.055, the Corrupt Practices Act. She argues that there could be no other purpose for Meeks to actually be in the polling places, shaking hands with voters, talking with voters and making food available to them, other than to either directly or indirectly solicit their vote and moral support. Appellant contends that if the Court of Appeals' opinion is upheld, the "Pandora's Box" of election day activities will be so widely opened that it may never again be closed. Specifically, appellant argues that the Court of Appeals' opinion, in essence, contends that Meeks' actions were deplorable, against public policy, and yet were still legal based upon the legislature's failure to enact a statute prohibiting that type of conduct. She further asserts that the Court of Appeals' opinion provides a green light for egregious activities to occur inside polling places on election day. We agree.

Kentucky's electioneering statute, KRS 117.235(1), generally provides that "no person, other than the election officers, challengers, and a minor child in the company of a voter, shall be permitted within the voting room while the vote is being polled, except for the purpose of voting...." KRS 117.235(3) further states that:

No person shall ... do any electioneering at the polling place or within a distance of five hundred (500) feet of a county clerk's office or any entrance to a building in which a voting machine is located ... Electioneering shall include the displaying of signs, the distribution of campaign literature, cards, or handbills, the soliciting of signatures to any petition, or the solicitation of votes for or against any candidate or question on the ballot in any manner, but shall not include exit polling.

Basically, KRS 117.235 proscribes certain conduct and informs candidates and their staff as to what they can and cannot do on election day. While KRS 117.235(5) does instruct who shall enforce the election laws, contrary to the Court of Appeals' assertion, there is no indication that the statute was only intended as a guideline for precinct workers. In fact, KRS 117.187, titled: "Training regarding election laws for state and county officials," is clearly the statute meant to guide election officers in their duties and sets forth the proper conduct at the polls.

Although Meeks claims that the food he provided at ten of the fifteen precincts in the 11th Ward was available only to precinct workers, he stipulated that it was readily available to all voters who entered the voting stations. Moreover, several of the precinct workers at those polls were themselves registered voters in the 11th Ward. Ms. Geneva Jones, a registered voter of the 11th Ward and a precinct worker for the 12th Ward polling place which shared a common area with an 11th Ward polling place, stated in an affidavit that she specifically told Meeks, "Oh, Reggie, you know better. You have no business being in here."

Having been an Alderman for 15 years, Meeks was well aware that according to the dictates of KRS 117.235, a candidate for public office may only be present in the voting poll or precinct where he is to cast his vote, and that he must leave immediately after

completing his ballot card. Yet, at ten of the fifteen voting stations in the 11th Ward, Meeks made free food available to anyone present, glad-handed voters as they entered, and spoke with voters as they signed in to vote. Based upon this evidence, we reverse the decision of the Court of Appeals and hold that Meeks' non-verbal conduct solicited votes and amounted to electioneering within 500 feet of a building where votes were being cast in violation of KRS 117.230. We can conceive of no other explanation for his actions.

■ Similarly, Kentucky's Corrupt Practices Act, as codified in KRS 121.055, requires the disqualification of a political candidate under the following circumstances:

No candidate for nomination or election to any state, county, city or district office shall expend, pay, promise, loan or become liable in any way for money or other thing of value, either directly or indirectly, to any person in consideration of the vote or financial or moral support of that person. No such candidate shall promise, agree or make a contract with any person to vote for or support any particular individual, thing or measure, in consideration for the vote or the financial or moral support of that person in any election, primary or nominating convention, and support of that person in any election, primary or nominating convention, and no person shall require that any candidate make such a promise, agreement or contract.

■ KRS 121.055 clearly prohibits a candidate from offering anything or promising any consideration, either directly or indirectly, in exchange for the support of a voter. The Court of Appeals' decision places great weight on the stipulation that Meeks did not verbally ask any voter to vote for him. We assert, however, that KRS 121.055 does not require a "verbal" communication. On the contrary, the statute contemplates that votes may be bought by gifts with no words spoken, and prohibits a candidate from even *indirectly* giving anything of value to a voter. Based upon this evidence we find that making free food available to precinct workers and voters was an item of value offered by Meeks in exchange for their votes or moral support in violation of KRS 121.055.

In addition, the Court of Appeals also found stipulation of evidence number eight (8) to be dispositive in that such a stipulation prevented appellant from clearly establishing that Meeks committed a punishable statutory violation. While this Court has previously held that it is insufficient to simply allege facts upon which elections laws were violated and that the contestant must go further and show how the alleged violation affected the votes cast, *Fuson v. Helton*, 314 Ky. 123, 234 S.W.2d 496 (1950); *Adams v. Wakefield*, 301 Ky. 35, 190 S.W.2d 701 (1945), *rev'd on other grounds*, *Barger v. Ward*, Ky., 407 S.W.2d 397 (1966); *Stanley v. Goff*, Ky., 324 S.W.2d 124 (1959); *Hill v. Mottley*, 142 Ky. 385, 134 S.W. 469 (1911), *modified*, 143 Ky. 158, 136 S.W. 134 (1911), we now determine that because those cases were decided under previous versions of Kentucky's election statutes, they cannot now serve to properly interpret KRS 121.055 or the amended KRS 117.235 and are distinguishable from the case at bar. Furthermore, to require appellant to show that a voter changed his vote as a result of Meeks' actions would put an unreasonable burden on challengers by forcing them to subpoena each and every voter in an effort to find one who changed his or her vote as a result of the misdeeds of the prevailing candidate.

■ It is beyond dispute that compliance with KRS 117.235 and 121.055 is mandatory. The legislature specifically stated in those statutes that: (1) candidates *shall* not campaign within five hundred (500) feet of polling stations; and (2) candidates "shall" not give, directly or indirectly, anything of value to voters in return for their vote or support. Of added significance is the inclusion of a criminal component to KRS 117.235. Violations of that law are now punishable as a Class A misdemeanor providing for a maximum of 12 months in prison and a $500 fine. KRS 117.995(6). Violations of KRS 121.055 also carry criminal penalties. KRS 121.990(8). Consequently, compliance with both KRS 117.235 and 121.055 is mandatory and strict compliance with these election laws is an absolute necessity.

The Texas Court of Appeals recently dealt with a similar situation in *Des Champ v. Featherston,* Tex.Ct.App., 886 S.W.2d 536, 539 (1994). In *Des Champ,* the court specifically reasoned that, "[t]o set aside an election for a violation of a mandatory provision, the contestant must prove only that a violation occurred. With few exceptions, such a violation results in the automatic invalidation of the election."

The reasoning in *Des Champ* is directly on point with the case at bar. Meeks willfully and intentionally disregarded and violated Kentucky's election laws during the May 28, 1996, primary campaign for 11th Ward Alderman. It was mandatory for him to abide by the law, he failed to do and, consequently, his election should have been invalidated.

■ As we determined in *Adams v. Wakefield,* 301 Ky. 35, 190 S.W.2d 701 (1945), *rev'd on other grounds, Barger v. Ward,* Ky., 407 S.W.2d 397 (1966), an election shall be set aside if improper electioneering affected the outcome of the case or could have resulted in something that changed the outcome or at least impaired the fairness of the election. Moreover, KRS 120.065 reads in pertinent part:

> If it appears from an inspection of the whole that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant or contestee can be adjudged to have been fairly nominated, the court may adjudge that there has been no election, in which event the nomination shall be deemed vacant.

■ In an election result with a mere eight (8) vote plurality and the other factors in the case, the outcome of this election was implicitly affected, or at the very least, the fairness of the election was impaired. While KRS 117.235 and 121.055 specifically state what activities "shall" be included as violations, they clearly are not limited to the activities listed. Meeks' conduct not only falls within the parameters of KRS 117.235 and 121.055, but is clearly the egregious behavior that was contemplated in *Sims, supra.*

Every candidate who runs for office is entitled to an even playing field, especially at a time when the electorate's confidence in the electoral process is increasingly diminished, as evidenced by the fewer number of voters who actually participate in the voting process. This Court cannot approve of or condone the conduct engaged in by Meeks at the polling stations in the 11th Ward. There was definitely not an even playing field in this case and if we were to leave this case as it currently stands, the confidence of the voters would not only diminish with respect to the electoral process, but also with the judicial process as a whole. Consequently, based upon our decision in *Adams, supra,* and the law set forth in KRS 120.065, we find that the Court of Appeals erred in upholding the trial court's dismissal of appellant's election contest action and, thus, reverse their decision, finding that Meeks' conduct did violate both KRS 117.235 and KRS 121.055.

■ Finally, appellant asserts that the Court of Appeals erred in finding that Meeks' failure to file a timely answer in the trial court was harmless error. We disagree. While there is some dispute as to who, appellant or the Clerk, was in the best position to make sure the summons was issued as directed, we agree with the trial court's reasoning that default judgments are not favored by the courts. *Howard v. Fountain,* Ky.App., 749 S.W.2d 690 (1988). Thus, we determine that the error in the summons allowing Meeks twenty, as opposed to seven, days to respond to appellant's complaint was harmless and, consequently, would affirm on this issue.

For the aforementioned reasons we affirm the Court of Appeals on the procedural issue regarding the issuance of the summons. However, we reverse its decision with respect to the other issues, finding that Meeks did, in fact, violate the electioneering statute, KRS 117.235, and the Corrupt Practices Act, 121.055. Consequently, pursuant to KRS 120.065, the nomination of respondent, Reginald K. Meeks, as the Democratic candidate for 11th Ward Alderman for the city of Louisville, is voided and the nomination is deemed vacant.

All concur.