Beverly McCLENDON, Appellant,

v.

Jerry R. HODGES, Appellee.

No. 2007–SC–000559–DGE.

Supreme Court of Kentucky.

Oct. 23, 2008.

Rehearing Denied Jan. 22, 2009.

Daniel T. Taylor, III, Louisville, KY, Counsel for Appellant.

David Martin Cross, Albany, KY, Counsel for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

This appeal arises from a judgment of the Monroe Circuit Court which voided the November 2006 mayoral election for the City of Tompkinsville, Kentucky. While the Court of Appeals affirmed the Monroe Circuit Court's finding of fraud, it reversed that portion of the judgment setting aside the election. This Court granted discretionary review. For the reasons set forth herein, we reverse the Court of Appeals and reinstate the judgment of the Monroe Circuit Court.

A mayoral election was held in Tompkinsville, Kentucky on November 7, 2006. Appellant, Beverly McClendon, defeated Appellee, Jerry R. Hodges, by a single vote.[1] Ten days later, Hodges petitioned the Monroe Circuit Court for a recount and contested the election. The Monroe County Board of Elections conducted a recount of the mayoral election and the election results were verified.

In his election contest, Hodges alleged that McClendon violated KRS 117.235(3) by conducting election activities within three hundred (300) feet of a polling place. He also alleged fraud in the conduct of walk-in absentee voting in District Four, including a charge that McClendon had conspired to perpetrate such fraud. McClendon counterclaimed, also alleging various violations of the Corrupt Practices Act.

The Monroe Circuit Court conducted a nine-day bench trial at which over one hundred witnesses testified. Ultimately, the trial court found no proof of specific acts of misconduct by McClendon. However, the trial court did find "pervasive" fraud with respect to the walk-in absentee voting in District Four.[2] Specifically, the trial court found that a "clear majority" of

---

1. McClendon received 325 votes, while Hodges received 324. There were three other mayoral candidates: Windell Carter, who received 251 votes; Norman Clarkson, who received 183 votes; and Marrs Kerr, who received 47 votes.

2. Walk-in absentee voting is governed by KRS 117.085.

the walk-in absentee votes were tainted for various reasons as follow: (1) that improper addresses were provided; (2) that persons obtaining absentee ballots were actually in the county on Election Day; and (3) that voters not entitled to assistance with voting machines pursuant to Kentucky statute obtained such assistance. The trial court found no credible proof to support McClendon's counterclaim.

Based on the evidence of fraud in District Four, the trial court concluded that the results obtained in that district did not reflect the true will of the electorate. Though the tainted votes were limited to District Four, the trial court found that the result of the entire mayoral election was seriously called into question due to the narrow margin of victory. Accordingly, the Monroe Circuit Court set aside the election.

McClendon appealed. The Court of Appeals affirmed the trial court's finding of pervasive fraud in the walk-in absentee ballots in District Four. However, the Court of Appeals did not agree that the fraud was so pervasive as to require voiding of the entire mayoral election. Rather, the Court of Appeals directed the Monroe Circuit Court to deduct the walk-in absentee votes in District Four from the total votes received by each mayoral candidate. McClendon appealed to this Court and we granted discretionary review. The sole issue presented for review is whether the trial court erred in voiding the entire mayoral election.

■■■ At the outset, we note that this election contest was initiated by Hodges pursuant to KRS 120.155. As the circuit court tried this matter without a jury, we review the court's findings of fact for clear error. RCr 52.01. That is, we examine whether the findings are supported by substantial evidence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003). The trial

court's conclusions of law are reviewed *de novo.*

■■ KRS 120.165 governs election contests. Subsection (4) of the statute states:

If it appears from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be judged to have been fairly elected, the Circuit Court, or an appellate court, on appeal, may adjudge that there has been no election. In that event the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify. If one of the parties is adjudged by the court to be elected to the office, he shall, on production of a copy of the final judgment, be permitted to qualify or be commissioned.

In the present case, the trial court determined that a "clear majority" of the walk-in absentee ballots in District Four were tainted and that the evidence established "pervasive fraud." We agree with the Court of Appeals that this finding was based on substantial evidence. Evidence presented at trial established that numerous persons who voted by absentee ballot were actually present in the county on Election Day. The trial court also found that the use of false addresses in District Four's walk-in absentee voting was "rampant."

■■ Pursuant to KRS 120.165, the question then becomes whether the fraud in District Four so permeated the entire election that a winner cannot fairly be determined. It is here that an examination of the walk-in absentee votes in District Four is necessary. A total of 143 walk-in absentee ballots were cast in that district and McClendon received 102 of these votes. However, from the testimony presented at trial, it is impossible to determine exactly

which votes were fraudulent.[3] Further, the trial court found simply that a "majority" of the walk-in absentee ballots were tainted, but did not state a specific number of votes. Thus, this Court cannot determine how many votes were tainted or for whom the fraudulent votes were cast.

Do the fraudulent ballots cast by walk-in absentee voters in District Four prevent us from judging whether either candidate was fairly elected? In reversing the trial court, the Court of Appeals focused on the statutory directive that an election must only be declared void upon "inspection of the *whole* record." KRS 120.165(4) (emphasis added). Because the fraudulent activity was limited to District Four's walk-in absentee voting, the Court of Appeals reasoned that the "whole record" did not evidence fraud. Further, the Court of Appeals emphasized the lack of evidence that any illegal or fraudulent conduct occurred in District Four on Election Day. In light of these circumstances, the Court of Appeals found it unnecessary to extend the fraudulent conduct of walk-in absentee voting in one district to the entire City of Tompkinsville.

In confining the effects of District Four's fraudulent walk-in absentee voting to that district, we believe the Court of Appeals overemphasized the statutory mandate that a reviewing court inspect "the whole record." While KRS 120.165(4) directs the reviewing court to inspect the whole record, there is no requirement that "fraud, intimidation, bribery or violence" be evidenced *throughout* the entire record. Rather, the essence of this review is to determine whether any candidate "can be judged to have been fairly elected." Stated otherwise, our analysis is not necessarily focused on the breadth of the fraud itself, but its effect on the entire election.

In this case, although the evidence of fraud was limited to District Four, it unfortunately cast doubt on the results of the entire election. McClendon won the mayoral election by a single vote. The evidence did not establish how many of the walk-in absentee ballots in District Four were fraudulent or for whom they were cast. Thus, we cannot fairly identify which votes should be disregarded to declare a winner. "[I]t is equally contrary to orderly judicial process to indulge in mere speculation in an effort to guess which candidate received the majority of legal votes." *Wells v. Wallace,* 337 S.W.2d 18, 21 (Ky.1959). Nor can we simply eliminate all District Four walk-in absentee ballots. With the narrowest of possible margins between these two candidates, the removal of even a single valid walk-in absentee vote changes the result of the election. "If the number of [invalid ballots] would be sufficient to change the result if they had been cast for the minority, then the election should be set aside upon the ground that it could not be determined with certainty that the result ... represented the will of the majority." *Lakes v. Estridge,* 294 Ky. 655, 172 S.W.2d 454, 456 (1943), *quoting Wallbrecht v. Ingram,* 164 Ky. 463, 175 S.W. 1022, 1028 (1915).

Though Kentucky courts are reluctant to declare an election void, our case law has long established that this extreme remedy is nonetheless necessary when it is impossible to fairly discern a winner. "The established rule is that where, after giving the evidence of fraud (or irregularities) its fullest effect, and fraudulent or illegal votes may be eliminated, and *the result of the election be fairly ascertained from votes which were regular or untainted,* the court should not go to the extreme

---

**3.** Due to an agreement between counsel, walk-in absentee voters who were called as witnesses at trial were not required to reveal for whom they cast a ballot.

of declaring the election void." *Beauchamp v. Willis,* 300 Ky. 630, 189 S.W.2d 938, 941 (1945) (emphasis added). Even when evidence of fraud is limited to only a portion of the electorate or to specific precincts, it may nonetheless be necessary to set aside the entire election. In *Campbell v. Combs,* where the evidence established irregularity and fraud in four precincts, the entire election was voided: "[W]e concur in the conclusion that the returns [of the entire election] must be disregarded because there was such a large proportion of illegal ballots cast it is impossible to determine just how many there were to be charged up against the contestees." 273 Ky. 404, 116 S.W.2d 955, 958 (1938).[4]

After an extended evidentiary hearing and well-reasoned findings, we believe the trial court got it right. In light of the unique circumstances of this case, particularly the very narrow margin of victory, we cannot declare a winner by removing all walk-in absentee votes cast in District Four. Such a remedy would necessarily void many valid ballots and would change the result of the entire election. For these reasons, the mayoral election for the City of Tompkinsville must be set aside. Though an inconvenience to the citizens of Tompkinsville, and unfortunately as a result of the reprehensible actions of a few, the electorate's right to a fair, reliable and democratic voting process must prevail.

For the foregoing reasons, we reverse the Court of Appeals and reinstate the judgment of the Monroe Circuit Court.

MINTON, C.J.; NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., concur. ABRAMSON, J., not sitting.

---

4. *See also Wells,* 337 S.W.2d at 22, ("[S]ince the illegal votes secretly cast were so substantial in number and since it cannot be determined for whom they were cast, the election affecting the county judge's and coroner's races is held void[.]"). *Cf. Beauchamp,* 189 S.W.2d at 941 (Where evidence of irregularity was limited to a handful of the 576 voting precincts and the trial court correctly refused to void the entire election, it "correctly admeasured the testimony in relation to the instances where the signatures were questioned, but allowing all proven illegal votes, *appellee would still have a majority.*") (emphasis added).