RENDERED: AUGUST 26, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0788-EL

JAMES LUERSEN, IN HIS
OFFICIAL CAPACITY AS
CAMPBELL COUNTY CLERK;
JAMES LUERSEN, IN HIS
OFFICIAL CAPACITY AS MEMBER
OF THE CAMPBELL COUNTY
BOARD OF ELECTIONS;
JACK SNODGRASS, IN HIS
OFFICIAL CAPACITY AS MEMBER
OF THE CAMPBELL COUNTY
BOARD OF ELECTIONS; JAMES
SCHROER, IN HIS OFFICIAL
CAPACITY AS MEMBER OF THE
CAMPBELL COUNTY BOARD OF
ELECTIONS; AND KENNETH
FECHER, DESIGNEE OF SHERIFF
MICHAEL JANSEN, IN HIS
OFFICIAL CAPACITY AS MEMBER
OF THE CAMPBELL COUNTY
BOARD OF ELECTIONS                                              APPELLANTS

                        AN ELECTION APPEAL
v.           ARISING FROM CAMPBELL CIRCUIT COURT
     HONORABLE CHARLES L. CUNNINGHAM, JR., SPECIAL JUDGE
                      ACTION NO. 22-CI-00387

DAVID FISCHER AND DAVID
FISCHER FOR CAMPBELL
COUNTY COMMISSIONER                                        APPELLEES


AND



NO. 2022-CA-0789-EL



BRIAN PAINTER AND
PAINTER FOR COMMISSIONER
COMMITTEE                                                      APPELLANTS



                              AN ELECTION APPEAL
v.          ARISING FROM CAMPBELL CIRCUIT COURT
        HONORABLE CHARLES L. CUNNINGHAM, JR., SPECIAL JUDGE
                         ACTION NO. 22-CI-00387



DAVID FISCHER; DAVID
FISCHER FOR CAMPBELL
COUNTY COMMISSIONER;
JAMES LUERSEN, IN HIS
OFFICIAL CAPACITY AS
CAMPBELL COUNTY CLERK;
JAMES LUERSEN, IN HIS
OFFICIAL CAPACITY AS
MEMBER OF THE CAMPBELL
COUNTY BOARD OF
ELECTIONS;
JACK SNODGRASS, IN HIS
OFFICIAL CAPACITY AS
MEMBER OF THE CAMPBELL
COUNTY BOARD OF

ELECTIONS; JAMES SCHROER,
IN HIS OFFICIAL CAPACITY AS
MEMBER OF THE CAMPBELL
COUNTY BOARD OF
ELECTIONS; AND KENNETH
FECHER, DESIGNEE OF SHERIFF
MICHAEL JANSEN, IN HIS
OFFICIAL CAPACITY AS
MEMBER OF THE CAMPBELL
COUNTY BOARD OF ELECTIONS                                    APPELLEES


OPINION
REVERSING

* * * * * *

BEFORE:  COMBS, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  These appeals come before the Court from a June 27, 2022, order of the Campbell Circuit Court, vacating the victory of Campbell County Commissioner Brian Painter ("Painter" or "Appellant") for his renomination in the District One Republican primary on May 17, 2022, and replacing Painter with challenger David Fischer ("Fischer" or "Appellee") on the November general election ballot.[1]  We reverse.  Accordingly, we conclude that Painter is entitled to be the Republican nominee for the Campbell County Commissioner general election in accordance with the tabulated primary results of

---

[1] Fischer asserts in his appellee brief that the brief of Campbell County Clerk James Luersen and the Campbell County Board of Elections is deficient and does not comply with the Kentucky Rules of Civil Procedure ("CR").  Having reviewed the brief filed by Campbell County Clerk James Luersen and the Campbell County Board of Elections, the Court holds that it substantially complies with the Civil Rules.

May 17, 2022.

Additionally, by separate order entered concomitantly herewith, we deny Fischer's motion and renewed motion to dismiss the appeals, and we deny the motions for reconsideration of an oral argument or alternatively for leave to file a reply brief.

## I. BACKGROUND

The primary for the Republican nomination for Campbell County Commissioner was on May 17, 2022. In preparation for primary day, the Campbell County Board of Elections held several election training sessions on May 2, 3, and 4, 2022. According to Campbell County Clerk James Luersen and the Campbell County Board of Elections (collectively referred to as "Luersen"), it is the long practice and tradition of Campbell County to allow election candidates to meet and greet poll workers during those training sessions. Luersen states, however, that all candidates must leave before the training sessions start, but the candidates may leave behind campaign materials for the trainees.

On May 4, 2022, Painter visited the Campbell County Administration Building, where the training sessions took place, and he placed campaign literature and pens on the training tables. That same day, in-person absentee voting was held upstairs on the floor above the training sessions. After the May 4th training session concluded, nineteen trainees went upstairs and cast votes on in-person

absentee ballots for the Campbell County Commissioner District One Republican primary for Campbell County Commissioner. Painter won the primary by 106 votes. In total, Painter received 4,180 votes, and Fischer received 4,074 votes.

On May 25, 2022, Fischer and his campaign for Campbell County Commissioner filed an election contest petition and a petition for injunctive relief. Therein, Fischer alleged Painter's conduct violated Kentucky's anti-electioneering law[2] and KRS 121.055,[3] a central component of the Corrupt Practices Act (KRS 120.015), by distributing campaign materials and handing out pens worth $0.22 each at the County Administration Building on May 4, 2022. Painter responded to the petitions, and Luersen was joined as a party to the proceedings.

The parties agreed there was no need for an evidentiary hearing. Thus, the circuit court directed the parties to submit supplemental briefing on the matters, after which it would take the matter under submission. The record contains the affidavit of Mark Lickert, a poll worker who attended the May 4th training session and voted upstairs afterwards. Record on Appeal ("R.") at 18. He

---

[2] Kentucky Revised Statute ("KRS") 117.235(3)(b) provides that "[n]o person shall electioneer within the interior of the building . . . during the hours in-person absentee voting is being conducted in the building." Subsection (3)(d) further provides that electioneering "shall include . . . the distribution of campaign literature, cards, or handbills[.]"

[3] KRS 121.055 provides in pertinent part that "[n]o candidate for nomination or election to any [county] office shall expend, pay, promise, loan or become liable in any way for money or other thing of value, either directly or indirectly, to any person in consideration of the vote or financial or moral support of that person."

attested that he was told he would not be able to vote in his precinct on election day and it was suggested to him to vote upstairs in the county clerk's office after training. *Id.* He believes that Painter distributed campaign materials at the training session to influence poll workers to vote for him because the poll workers would be voting immediately thereafter. *Id.* at 19. The record also contains an affidavit of Campbell County Deputy Clerk Rhonda Wright. R. at 192. She attested that no early voting took place on May 2, or May 3, 2022. *Id.* at 193. She further attested that, on May 4, 2022, thirty-four people voted during early voting hours. *Id.* Notably, the record does not contain evidence that Painter's conduct directly influenced and solicited votes for him.

On June 27, 2022, the circuit court entered an order vacating Painter's victory and directing Luersen to replace Painter with Fischer on the general election ballot. The circuit court found that Wright's affidavit indicates that nineteen trainees cast votes on May 4, 2022, during in-person absentee voting hours. R. at 321, ¶ 7. The circuit court also found that "Fischer does not appear to have lost because Painter violated the [sic] Kentucky's election laws on May 4." *Id.* at 324, ¶ 16. The court noted though that the "available data does support a conclusion that the events of May 4 likely altered the *voting* such that the election was not 'fair.'" *Id.* at 324, ¶ 17. "The vast majority of the votes cast in the primary were cast on election day. Fischer received more of those votes than

Painter did. However, Painter received a statistically significant larger share of the votes cast prior to election day," the court remarked, analyzing data from the Campbell County Clerk's website. *Id.*

The court added:

> Clearly, Painter received not insignificantly more votes than Fischer prior to election day (a lead of 129 votes) which was enough to overcome his shortfall on May 17 (a deficit of 23 votes). It is not unreasonable to conclude that Painter's efforts in those early days, including the electioneering Fischer complains of, moved some early votes his way. **It is impossible to say how much was due to improper politicking versus old-fashioned (and legal) hard work – other than to say what happened on May 4 does appear to have been influential, but not decisive**.

*Id.* (emphasis added).

The court then opined:

> As a practical matter, it is impossible to know exactly how many votes changed because of a particular violation of the election laws. Voters cannot be compelled to go under oath and explain their choices or motivation. Moreover, one cannot accurately gauge the ripple effect of one voter being improperly electioneered, then speaking to a spouse or friend, and so on. Such impacts may be more pronounced when the offending party is an incumbent – someone already cloaked in the mantle of governmental authority and power.

*Id.* at 327, ¶ 24.

The court concluded that Painter's conduct violated the electioneering statute but did not violate the Corrupt Practices Act. *Id.* at 326, ¶ 21. The court

–7–

reasoned that it must discard the election results "for misconduct which impairs the fairness or equality of the process irrespective of whether it can be determined conclusively that it changed the outcome." *Id.* at 327, ¶ 24. The court based its decision to vacate Painter's victory on the common law dictates in the Kentucky Supreme Court case *Ellis v. Meeks*, 957 S.W.2d 213 (Ky. 1997). R. at 326, ¶¶ 21, 23.

*Ellis* involved an election contest regarding the primary election for the Democratic nomination for the 11th Ward Alderman in Louisville, Kentucky. 957 S.W.2d at 213. Incumbent Reginald Meeks received 815 votes, and his challenger Gerry Marie Ellis received 807 votes. *Id.* Ellis filed an election contest petition after she learned that Meeks had greeted voters and brought fried chicken to several polling places, making it available to poll workers and others present on election day. *Id.* at 214. Although Ellis could not prove that Meeks' conduct diverted votes to his favor, the Kentucky Supreme Court voided the entire election and deemed the nomination as vacant on the ground that Meeks' conduct violated Kentucky's anti-electioneering law and Corrupt Practices Act, creating an uneven playing field which, if left undisturbed, would have diminished voter confidence in the electoral and judicial processes. *Id.* at 217.

## II.  STANDARD OF REVIEW

These appeals come before the Court upon the circuit court's findings of fact and conclusions of law and upon the record made in the circuit court. Accordingly, "the court's findings of fact shall not be set aside unless clearly erroneous[.]"  *Hardin v. Montgomery*, 495 S.W.3d 686, 693 (Ky. 2016) (internal quotation marks omitted) (citing CR 52.01; *McClendon v. Hodges*, 272 S.W.3d 188, 190 (Ky. 2008)).  "A factual finding is not clearly erroneous if it is supported by substantial evidence."[4]  *Id.* (citing *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003)).  The circuit court's conclusions of law regarding the interpretation of election laws, however, are reviewed *de novo*.  *Id.* at 694 (citation omitted).

## III.  ANALYSIS

The electoral process is the core of our democratic government, and all courts should abhor superseding that process.  Nevertheless, the General Assembly has recognized there may be instances when election results do not accurately reflect the will of the people.  In such instances, the judicial branch not only has the authority to void an election but has the duty to do so where there are such "frauds and irregularities in the election that it cannot be told who was

---

[4] "Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion and evidence that, when taken alone or in the light of all the evidence . . . has sufficient probative value to induce conviction in the minds of reasonable men."  *Id.* (citation omitted).

elected." *Stewart v. Wurts*, 143 Ky. 39, 135 S.W. 434, 439 (1911). The seriousness of the Court's duty was emphasized in *Skain v. Milward*, 138 Ky. 200, 127 S.W. 773, 778-79 (1910):

> [Elections] are the means provided by law for the expression of the will of the people. To set them aside unnecessarily would be to destroy that confidence in them which is essential. If often set aside they would be less attended; for the voters would await the next chance, and the election, instead of settling things, would be only the starting point for new controversies. Elections must be free and equal; but they cannot be free and equal unless supported by public confidence. When once the notion prevails that confidence may not be placed in the stability of elections, their power and usefulness is destroyed.

KRS 120.065 sets the standard for voiding a primary and deeming the people's nomination as vacant. The statute states in pertinent part:

> If it appears from an inspection of the whole record that there has been such fraud, intimidation, bribery, or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly nominated, the court may adjudge that there has been no election, in which event the nomination shall be deemed vacant.

KRS 120.065.[5] In other words, the record must demonstrate there has been such fraud, intimidation, bribery, or violence so pervasive as to cast doubt on the fairness of the entire election before the court may adjudge the election void. *See*

_____

[5] The quoted text has been the standard for voiding elections since Kentucky revised its statutes in 1942. *See* 1942 Ky. Acts ch. 208.

*also Hardin*, 495 S.W.3d at 693 (quoting *Stewart*, 143 Ky. 39, 135 S.W. 434, 439 (1911) ("[I]t must be affirmatively shown, not only that [fraud, intimidation, bribery, or violence] existed, but that they affected the result to such an extent that it cannot be reasonably determined who was elected.")).

Consequently, the evidentiary bar is high for a successful election challenge: The burden of proof upon the challenger is clear and convincing. This elevated standard has been analyzed in early opinions. In *Skain*, the Court stated:

> The burden of proof is on the contestant to show such fraud, intimidation, bribery, or violence in the conduct of election that neither the contestant nor contestee can be adjudged to have been fairly elected. These things *are not presumed*, but it must be *affirmatively shown*, not only that they existed, but that they affected the result to such an extent that it cannot be reasonably determined who was elected.

127 S.W. at 778 (emphasis added). Mere speculation or suspicion will not justify requiring the voters to "undergo the labor, excitement, and expense of another election unless *clearly convinced* that the results. . . . were not fairly and legally attained." *Stewart*, 135 S.W. at 439 (emphasis added). In *Hall v. Martin*, 183 Ky. 120, 208 S.W. 417, 419 (1919), the Court earnestly warned against a court's exercising its duty to adjudge an election void unless "the evidence should point *unerringly* to the establishment of the invalidating facts." (Emphasis added.) In *Upton v. Knuckles*, the onerous burden on the challenger was recognized when the Court stated: "[I]t is only in the most *flagrant* kind of case that voters will be

-11-

disfranchised for illegal acts of the election officials." 470 S.W.2d 822, 827 (Ky.

1971) (emphasis added).

> In *Goodwin v. Anderson*, the Court remarked:

> Section 1569 [Kentucky's former electioneering statute[6]] provides a heavy penalty upon conviction of any person electioneering on election day within any polling place or within 50 feet thereof. But in the absence of specific pleading that such acts were committed and that they changed the result, or were of such character as to require the court to say that there was such fraud and intimidation that it could not be said there was a fair election, the allegations cannot be deemed to state a ground of contest.

269 Ky. 11, 106 S.W.2d 152, 155 (1937), *overruled on other grounds by Barger v.*

*Ward*, 407 S.W.2d 397 (Ky. 1966).

> In *Pettit v. Yewell*, 113 Ky. 777, 68 S.W. 1075, 1075 (1902), a

Republican election-judge distributed ballots for a general election for mayor,

explaining how each recipient could vote the straight Republican ticket. *Id.*

During the election contest, the Court ruled that, even though the election-judge's

reprehensible conduct violated Kentucky's election laws, there was no evidence of

how the informed voters voted or how the contestant had been prejudiced. *Id.*

---

[6] In 1942, the Commonwealth of Kentucky revised Section 1569 to become KRS 118.330. KRS 118.330 was then repealed in 1972, and later reenacted in 1974 as KRS 117.235. In 1978, KRS 117.235 was amended to include the electioneering definition. And in 1994, the General Assembly amended KRS 117.235 so that no electioneering may occur within 500 feet of a building where the county clerk's office is located or where absentee voting is being conducted. The 500 feet restriction has since been amended to 100 feet.

Thus, the Court refused to discard all votes of the affected precinct. *Id.* In so holding, the Court reasoned, "[t]he statute prohibiting judges from being guilty of such conduct is mandatory as to the officer, but we are unwilling to disfranchise the voters of that precinct because of his conduct." *Id.*

In *Hill v. Mottley*, certain election officers greeted incoming voters as "good fellows" who knew how to vote "wet," in reference to adopting a local liquor law. 142 Ky. 385, 134 S.W. 469, 473 (1911). The Court ruled:

> Conceding that this practice was indulged in, it cannot be contended that either the voter to whom such an improper remark was addressed or all the voters of the entire city should be disfranchised for such misconduct. To do so would be to make an election depend, not upon the result as indicated by the ballot, but upon the propriety or impropriety of remarks made by the officers conducting the election.

*Id.*

In *Sims v. Atwell*, the trial court found that electioneering had occurred not only in the vicinity of the polling places but up to the very doors of the voting rooms. 556 S.W.2d 929, 933 (Ky. App. 1977). And yet, on review, this Court rejected the election contestant's request to invalidate the votes of the affected precinct. *Id.* This Court ruled that "there was no evidence that the electioneering interfered with the secrecy of the voting or that it in any way affected the outcome of the election at the . . . precinct"; thus general objections to

the electioneering conduct could not sustain a judgment invalidating all votes cast in that precinct. *Id.*

Application of the elevated standard prescribed by KRS 120.065 can be found also in the case cited by the *Ellis* Court, *Adams v. Wakefield*, 301 Ky. 35, 190 S.W.2d 701 (1945), *overruled on other grounds by Barger*, 407 S.W.2d 397. In *Adams*, a case which involved a ballot question regarding a local liquor law, Kentucky's then-highest court refused to set aside the election results. 190 S.W.2d at 704. The Court determined that the contestant's evidence of the prohibitionists' conduct was too illusory and speculative to be of any weight or consequence on the election outcome. *Id.* Consequently, the Court found the grounds for the election contest were not sustained as the contestant had failed to demonstrate that the prohibitionists' electioneering around the polls converted enough votes to sway the election results. *Id.*

Kentucky courts have been reluctant to void an entire election where there was no sufficient evidence of prejudice or manipulation, which would support such the drastic measure voter disenfranchisement. In *Hardin v. Montgomery*, the Kentucky Supreme Court reversed a trial court's order setting aside election results and declaring the office vacant. 495 S.W.3d at 692. Although *Hardin* involved several election irregularities and a violation of the Corrupt Practices Act, the Court held that the evidence presented by the election

contestant was insufficient to set aside the election. *Id.* at 706. The contestant had failed to discharge his burden of proof that the alleged violations were linked to invalid or illegal votes directly manipulating the election outcome so that it could not have been adjudged as fair. *Id.* The Court reiterated and emphasized the elevated standard for setting aside an election, which the contestant's evidence woefully failed to meet:

> Thus, if the number of invalid ballots would be sufficient to change the result if they had been cast for the minority, then the election should be set aside upon the ground that it could not be determined with certainty that the result . . . represented the will of the majority. However, if it can reasonably be done, a court should uphold the validity of an election, and not set it aside for light and trivial causes, and where there has been fraud, intimidations, bribery, illegalities, and irregularities, and the results of such sinister influences can be eliminated, and the result clearly ascertained between the legal voters, it is the duty of the court to do so, and to sustain the election, but, if the fraud, intimidation, bribery, irregularities, and illegalities are such, that the court cannot with reasonable certainty determine who has received a majority of the legal votes, the election should be set aside, and a candidate cannot be declared a victor, unless he can be shown to have received a majority or plurality of the legal votes cast at the election. And the established rule is that where, after giving the evidence of fraud (or irregularities) its fullest effect, and fraudulent or illegal votes may be eliminated, and *the result of the election be fairly ascertained from votes which were regular or untainted*, the court should not go to the extreme of declaring the election void.

*Id.* at 709 (internal quotation marks, brackets, and citations omitted).

In the instant case, the record demonstrates that Painter improperly electioneered on a separate floor of the County Administration Building on the same day that in-person absentee voting occurred. There is also evidence that nineteen people, who encountered Painter and his campaign materials, also voted in the primary upstairs during in-person absentee voting hours.

However, there is no evidence in the record that those nineteen people voted for Painter or changed their planned votes from Fischer to Painter. And there is no evidence those voters favorably viewed their encounters with Painter and his campaign materials, thus motivating them to proselytize others, thereby creating a ripple effect. There is also no evidence that Painter's conduct on May 4, 2022, directly swayed votes for him. Even if the court were to discard all in-person absentee votes cast on May 4, 2022, Painter still wins by a majority.

Instead, the circuit court vacated Painter's victory based on the purported ripple effect of Painter's conduct because Painter received the majority of in-person absentee votes whereas Fischer received many of his votes on primary day. This anomaly, however, does not warrant voter disenfranchisement. The Kentucky Supreme Court has warned that "our case law holds that a statistical anomaly in absentee voting is not alone sufficient grounds to set aside an election or to cast out of all the absentee ballots." *Hardin*, 495 S.W.3d at 697. "Showing that the vote tally *looks* suspicious is not the same thing as proving the illegality of

–16–

the votes tallied." *Id.* at 698. "Because a statistical anomaly alone does not authorize the courts to disturb results of th[e] election, other evidence of significant irregularities affecting those votes must be established." *Id.* Furthermore, "[b]efore a case is submitted . . . on circumstantial evidence the proven facts must justify a fair inference of liability. An inference of liability is not a fair one if other inferences of non-liability are equally as reasonable." *Id.* at 705 (quoting *Bryan v. Gilpin*, 282 S.W.2d 133, 135 (Ky. 1955)).

Nothing in the record supports the circuit court's ripple effect theory. And, based on the record, Fischer has not differentiated the effect of Painter's legitimate campaigning efforts from his improper electioneering conduct at the May 4th training sessions. Fischer's proffered explanation as to why Painter received more absentee votes than Fischer is conjecture at best and does not establish a causal nexus between Painter's conduct and his 106-vote-majority win. "[U]nconvincing and unproven allegations that merely raise questions cannot provide the basis for voiding the result of an election." *Id.* at 707.

Accordingly, the circuit court's holding is based on mere speculation and illusory evidence, which do not meet the elevated standard for voiding a primary under KRS 120.065. "One contesting an election has a heavy burden and the public has a right to demand substantial proof. Tolerating a lesser standard allows mere speculation and suspicion of political wrongdoing to become a

–17–

presumption of electoral corruption." *Hardin*, 495 S.W.3d at 705. Based on the record, Fischer has not discharged this heavy burden. Therefore, we hold the facts of this case do not warrant judicial intervention voiding the entire Republican primary for Campbell County Commissioner.

Courts must not whittle away the elevated standard for setting aside election results to the extent that the cure becomes worse than the disease, *aegrescit medendo*. "[T]he power to nullify an election and cast aside the apparent will of the people is a tremendous power that cannot be exercised on the basis of popular perception and common assumption supported only by evidence that arouses suspicion." *Hardin*, 495 S.W.3d at 705. When the circuit court invalidated the primary results, it disenfranchised all Campbell County voters who had cast legal votes in the primary for the Republican nominee of the Campbell County Commissioner. Accordingly, this judicial intervention shall not stand.

## IV. CONCLUSION

WHEREFORE, based on the foregoing reasons, we REVERSE the Campbell Circuit Court's June 27, 2022, order voiding the 2022 Campbell County Commissioner Republican primary results.


ALL CONCUR.

BRIEF FOR JAMES LUERSEN, IN HIS OFFICIAL CAPACITY AS CAMPBELL COUNTY CLERK; JAMES LUERSEN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE CAMPBELL COUNTY BOARD OF ELECTIONS; JACK SNODGRASS, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE CAMPBELL COUNTY BOARD OF ELECTIONS; JAMES SCHROER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE CAMPBELL COUNTY BOARD OF ELECTIONS; AND KENNETH FECHER, DESIGNEE OF SHERIFF MICHAEL JANSEN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE CAMPBELL COUNTY BOARD OF ELECTIONS:

Jeffrey C. Mando
Olivia F. Amlung
Covington, Kentucky

BRIEF FOR BRIAN PAINTER AND PAINTER FOR COMMISSIONER COMMITTEE:

Carol Schureck Petitt
Kyle M. Vaughn
Tess M. Fortune
Pewee Valley, Kentucky

BRIEF FOR DAVID FISCHER AND DAVID FISCHER FOR CAMPBELL COUNTY COMMISSIONER:

Steven J. Megerle
Covington, Kentucky