RENDERED:  FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1214-MR

STEVE NOE												APPELLANT

v.				APPEAL FROM ESTILL CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
ACTION NOS. 11-CI-00286, 13-CI-00001, & 13-CI-00045

ESTATE OF ROBERT McINTOSH;
CATIE McINTOSH; AND CAYLA
McINTOSH, INDIVIDUALLY AND
AS EXECUTRIX OF THE ESTATE OF
ROBERT McINTOSH												APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

KAREM, JUDGE:  Steve Noe appeals from a judgment ordering him to pay

Robert McIntosh $13,734.82 in damages for timber trespass.  We affirm.

Robert McIntosh filed an action against Noe, alleging Noe had

committed a timber trespass as defined in Kentucky Revised Statutes (KRS)

364.130.  McIntosh and Noe had life estates in separate parcels of land in an area

known as Tipton Ridge. For simplicity's sake, we need not discuss the owners of the remainder interests of either parcel, which we shall refer to as the McIntosh tract and the Noe tract. The gist of McIntosh's complaint was that a logger hired by Noe, Harold Estes, had improperly removed timber from the McIntosh tract.[1] McIntosh raised no claims against Estes, but Noe later asserted claims against Estes for contribution, indemnity, and apportionment. However, Estes was dismissed as a party prior to trial on statute of limitations grounds.

After conducting a bench trial, the trial court issued an amended final judgment which provided in relevant part that a timber trespass had occurred on eleven acres, eight of which were part of the McIntosh tract. The court ordered Noe to pay McIntosh 8/11ths of the total value of the improperly harvested timber, plus 8/11ths of the total costs to remediate the land from which the timber had been cut. However, the trial court apportioned 75% of the fault to Estes.

Noe and McIntosh each appealed. Noe argued that the trial court should have excluded the testimony of Mike Oliver, a surveyor hired by McIntosh. We disagreed. *Noe v. McIntosh*, No. 2020-CA-1013-MR, 2022 WL 1592696, at *4 (Ky. App. May 20, 2022). We also rejected Noe's argument that the trial court

---

[1] Robbie McIntosh passed away during the pendency of this action, but his estate was timely substituted as a party. We will refer to Robbie McIntosh and to his estate simply as McIntosh.

had "erred by admitting or by giving too much weight to the testimony of the timber expert, Gavin Wilson." *Id.* at *5.

However, we agreed with Noe that the trial court's award of damages was improper. Specifically, we held:

> Oliver testified that there were approximately 22 acres above the cliff and of the 22 acres, 16 acres were owned by the McIntoshes . . . . Oliver also testified that half of the 22 acres had been logged – 11 acres. Additionally, Wilson determined that 350 trees had been cut in the disputed area. So, the court's findings that 11 acres had been logged and that 350 trees had been cut was supported by substantial evidence of a probative value. However, the circuit court's finding that the McIntoshes owned 8 of the 11 acres logged is without any evidentiary support. Rather, it appears that the circuit court merely estimated that of the 11 acres logged above the cliff, 8 acres were owned by the McIntoshes. The court arrived at this estimation by taking the total number of acres owned by the McIntoshes above the cliff (16 acres) and the total number of acres of real property above the cliff (22 acres) to arrive at a percentage of acres owned by the McIntoshes (16/22 or 73 percent). The court then extrapolated this percentage (73 percent or 16/22) to arrive at the estimation that 8 of the 11 acres logged were owned by the McIntoshes.
>
> As there was no evidence to support the circuit court's finding that the McIntoshes owned 8 of the 11 acres actually logged, we are compelled to conclude that this finding of fact was clearly erroneous. The circuit court based its award of damages to the McIntoshes upon its erroneous finding of fact that they owned 8 of the 11 acres logged. Again, we can find no evidence in the record to support this finding. We thus vacate the circuit court's award of $6,867.41 to the McIntoshes against

Noe and remand for the circuit court to reconsider its
award of damages to the McIntoshes.

*Id.* at \*5-6 (internal quotation marks and citations omitted).

McIntosh's cross-appeal focused on the trial court's decision to apportion fault to Estes. We agreed that the apportionment of fault to Estes was erroneous. *Id.* at \*7. We did not order a new trial; instead, we vacated the damages award and remanded the matter "for proceedings consistent with this Opinion." *Id.* at \*8.

On remand, Noe asked the trial court to conduct a new trial, but instead the trial court issued a new judgment without first receiving new evidence. The judgment on remand states in pertinent part:

> Steven Noe admitted in his testimony that between 3 and 5 acres were cut from the McIntosh tract. This constitutes a judicial admission and is conclusive as to [Noe's] logging of between 3 to 5 acres of [McIntosh's] land . . . .
>
> Accepting the midpoint of Noe's admission as to the number of acres of McIntosh's timber that Noe had logged, the Court finds from a preponderance of the evidence and with a reasonable certainty that 4 acres . . . out of the 11 acres timbered . . . came from the land of [McIntosh]. As a result, [McIntosh] is entitled to judgment for 4/11th of the $17,780.80 in timber removed from the operation, as well as judgment for 4/11th of the $20,000.00 associated reclamation costs . . . .
>
> Judgment is hereby entered in favor of . . . McIntosh against . . . Noe in the amount of $13,734.82, which includes $6,462.10 for the value of 4/11th of the

-4-

> timber taken from the logging operation; and $7,272.72
> for 4/11th of the reclamation costs.

Record (R.) at 377-78. Noe then filed this appeal.

The scope of our review of a judgment issued pursuant to a bench trial is settled. We review a trial court's findings of fact deferentially, meaning we may only disturb them if they are clearly erroneous. *See, e.g.*, *McClendon v. Hodges*, 272 S.W.3d 188, 190 (Ky. 2008). "That is, we examine whether the findings are supported by substantial evidence." *Id.* However, "appellate review of legal determinations and conclusions from a bench trial is *de novo*." *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016).

Here, in light of our previous opinion, it is accepted that eleven acres were timbered. *Noe*, 2022 WL 1592696, at *5. The main question thus becomes what portion of those eleven acres belonged to McIntosh since it would not have been improper for Noe to have timber cut from his own property.

Noe argues, as he did in the first appeal, that there is no evidence to support the trial court's finding that four acres of timber were improperly harvested from the McIntosh tract. We disagree because Noe's own testimony supports the trial court's finding.

Much of the testimony about how much timber was removed from the McIntosh tract was hazy, with various witnesses giving various assessments on

that point. But Noe himself provided adequate testimony to support the trial court's finding.

Noe testified first that it was his understanding, based on discussions he had with Oliver, that "two to three acres . . . possibly five acres at the most" of timber had been removed from the McIntosh tract. Video, 11/8/2019, 1:45:00 *et seq.* Noe voiced no disagreement with Oliver's assessment of the acreage timbered from the McIntosh tract. Noe later testified that about three acres of timber were taken from the McIntosh tract, though he was uncertain if Estes had been the one to remove that timber because, according to Noe, multiple people had logged the McIntosh tract. *Id.* at 2:20:10-2:22:30 *et seq.* Finally, when asked whether it would have been better practice for McIntosh to have instructed Oliver to indicate on his survey where the stumps of the cut timber were located, Noe's somewhat nonresponsive, lengthy answer included a comment that the trial would not have occurred if McIntosh had hired a "timber guy" to survey the "three or four acres" of the McIntosh tract which Estes had logged. *Id.* at 2:27:40 *et seq.*

The trial court, as the finder of fact, had the exclusive ability to weigh the evidence and determine witness credibility. *See, e.g.*, *C. W. Hoskins Heirs v. Wells*, 560 S.W.3d 852, 856 (Ky. 2018). Thus, the trial court was permitted to place determinative weight on Noe's testimony that between three and five acres of timber had been improperly removed from the McIntosh tract, even though other

witnesses testified differently. Despite his arguments to the contrary, Noe's testimony was not merely a repetition of what others had told him about how much timber had been cut from the McIntosh tract. The trial court's finding that four acres of timber were improperly removed from the McIntosh tract is within the range of Noe's testimony and thus is a permissible factual inference rationally based upon evidence of record, not mere speculation. *Dingus v. FADA Service Co., Inc.*, 856 S.W.2d 45, 49 (Ky. App. 1993) (holding that facts inferred from evidence in the record "have the same dignity as evidentiary facts. Unless clearly erroneous, we cannot disturb them on appeal."). Similarly, the court was permitted to reject Noe's speculative testimony that someone besides the logger he hired, Estes, may have improperly removed the timber from the McIntosh tract.

As Noe stresses, there was inconsistent testimony about how many acres of the McIntosh tract were logged. But that does not entitle Noe to relief. When evidence conflicts, the finder of fact is inherently required to accept some evidence and to reject some evidence. As long as a court's findings are supported by substantial evidence, which the findings at issue are, they may not be disturbed by an appellate court simply because there was contradictory evidence.

We do agree with Noe that his testimony was too indefinite to constitute a judicial admission. "[E]stimation or guesswork" is insufficient to rise to the level of a judicial admission. *City of Lexington v. Clarke*, 290 Ky. 290, 160

S.W.2d 653, 654 (1942).  Instead, a party's testimony may constitute a judicial admission only if it contains "no probability of error . . . ."  *Moore v. Roberts By and Through Roberts*, 684 S.W.2d 276, 278 (Ky. 1982).  Noe testified somewhat inconsistently about how many acres of timber were removed from the McIntosh tract.  Such imprecise testimony carries a "probability of error" and thus lacks the definitiveness necessary to constitute a judicial admission, especially since other witnesses testified differently as to how many acres had been improperly timbered.

Nonetheless, the trial court's improper classification of Noe's testimony as a judicial admission makes no practical difference under these facts.  A judicial admission can be a sufficient basis for a directed verdict.  *Witten v. Pack*, 237 S.W.3d 133, 136 (Ky. 2007).  But the trial court did not direct a verdict based on Noe's testimony, nor did the court prevent Noe or McIntosh from presenting whatever other admissible, relevant testimony each wished to present.  Indeed, the court did not originally deem Noe's testimony to be a judicial admission; instead, the court did not classify the testimony as a judicial admission until receiving the matter anew on remand from this Court.[2]  In short, the trial court used improper nomenclature when it found Noe's testimony to be a judicial

---

[2] In fact, the trial court seemingly rejected Noe's testimony in the original opinion because the court concluded eight acres of the McIntosh tract had been improperly logged, an amount well above the five-acre maximum to which Noe testified.  Although the practice is facially unusual, Noe does not argue, nor cite to authority so holding, that the trial court was barred from reassessing and reweighing the evidence on remand.

admission, but that terminology error is harmless since Noe's testimony supports the court's finding that four acres of the McIntosh tract were improperly logged.

Finally, we also reject Noe's very closely related argument that the damages awarded by the trial court are speculative. We previously affirmed the court's finding that eleven acres had been logged. *Noe*, 2022 WL 1592696, at \*5. And we noted that "Wilson estimated that the cut timber had a total value of $17,770.80. Wilson also estimated that damage remediation cost for the land would be $20,000." *Id.* Noe attacks Wilson's testimony because he did not state precisely where the cut stumps were vis-à-vis the property lines. But the trial court, as the finder of fact, was permitted to accept Wilson's testimony regardless of any inconsistencies or deficiencies therein.

We also have affirmed herein the trial court's finding that four acres of improper harvesting occurred on the McIntosh tract. Thus, determining damages requires only applying mathematics to those facts as Noe cites no authority to support his argument that the court was required to determine the specific number, quality, and species of the trees cut on the McIntosh tract or the exact four acres on that tract where the timber trespass occurred.

Since four of the eleven timbered acres were part of the McIntosh tract, McIntosh was entitled to damages for 4/11ths of the total value of the removed timber and the total remediation costs. In decimal form, 4/11ths equals

0.36 (repeating).  And 0.36 x $17,770.80 (total value of the timber) = $6,462.10 (without rounding up); 0.36 x $20,000.00 (total remediation cost) = $7,272.72 (without rounding up); $6,462.10 + $7,272.72 = $13,734.82.  The trial court's damages award exactly matches that sum.

We have carefully considered all of the arguments in Noe's brief but perceive no error in either the trial court's finding that a timber trespass occurred on four acres of the McIntosh tract or the court's award of damages to McIntosh.

For the foregoing reasons, the Estill Circuit Court is affirmed.

ALL CONCUR.


BRIEF FOR APPELLANT:

Rodney G. Davis
Richmond, Kentucky

BRIEF FOR APPELLEES:

Brooks Stumbo
Richmond, Kentucky